**Ryan W. POOLE, by his mother and next friend, Barbara ELLIOTT,**

v.

**TEXTRON, INC., et al.**

**No. CIV.WMN–98–280.**

United States District Court, D. Maryland.

March 30, 2000.

---

Dana Whitehead McKee, Brown, Goldstein & Levy, Baltimore, Maryland, for Plaintiff.

Andrew Gendron, Thomas M. Goss, Goodell, DeVries, Leech & Gray, Baltimore, Maryland, for Defendants.

## *MEMORANDUM OPINION*

GAUVEY, United States Magistrate Judge.

### I. INTRODUCTION

This is a product liability case in which the plaintiff, Ryan W. Poole ("Poole"), has sued Textron, Inc. ("Textron") for alleged defects in a golf car, which resulted in serious injuries to him. The trial judge referred the undersigned all discovery disputes. By Memorandum and Order dated May 20, 1999, after a hearing, I granted plaintiff's three discovery motions in part, ordered, *inter alia*, Textron to do substantial additional investigation to respond to Poole's discovery requests, and held *sub curia* the request for attorneys' fees or other sanctions pending further submissions and completion of the specified remedial actions. Textron filed with the trial judge objections to several of the discovery rulings, which the trial judge rejected, affirming the discovery rulings below. At the request of Textron, a further hearing was held on the request for attorneys' fees, costs and other sanctions, after which the parties submitted affidavits on the time expended and the appropriate hourly rate for the requested attorneys' fees. The matter is now ripe for decision.

Before the Court is plaintiff's request for attorneys' fees and other expenses related to the three substantive discovery motions and other sanctions: the motion for sanctions raising six instances of discovery abuse,[1] the motion to compel production of documents and the motion to determine sufficiency of answers and objections to requests for admissions. This Court has already ruled on the merits of these three motions. The current issue facing the Court is whether an award of expenses including attorneys' fees or other sanction is justified under the governing rules and case law and if so, the amount of expenses or sanction.

Textron acknowledges this Court's authority to assess sanctions to punish discovery abuses under Fed.R.Civ.P. 37, Fed.R.Civ.P. 26(g) and the inherent authority of the Court. (Paper No. 63 at 6). However, Textron argues that an award of fees is inappropriate for several reasons. Chiefly, Textron argues that its collection and investigative efforts to comply with the Court's May 20, 1999 Order were both extensive and expensive—costing Textron $23,260 in attorneys' fees and expenses. That "sanction" is, in Textron's view, sufficient. Alternatively, Textron argues that plaintiff's request for expenses, including fees, in the amount of $50,346.89 is grossly excessive, under governing law. Specifically, Textron objects to the hourly rate charged by the plaintiff's counsel as not in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

For the reasons stated below, the Court awards $37,258.39 in expenses, including attorneys' fees, but declines to award any other sanction under the rules or its inherent power.

---

1. These instances of discovery abuse are incomplete document production, failure to provide accurate interrogatory answers, lack of diligent search for documents and failure to provide a corporate designee able to address all specified areas of inquiry, defendants' refusal to answer questions at the deposition, defendants' lack of candor with the Court and counsel and Textron's attempt to conceal the existence of the 1998 GX–440 golf car in its possession.

## II. GOVERNING LAW ON ENTITLEMENT TO SANCTIONS AND EXPENSES, INCLUDING ATTORNEYS' FEES

■ As Textron acknowledged, this Court has authority to redress discovery misconduct under the Federal Rules as well as under its inherent powers, and can impose a range of sanctions from award of expenses against both a party and its counsel to an entry of a default judgment. The sanction, of course, depends on the nature of the discovery abuse.

■ The Court's inherent authority is not displaced or limited by the sanctioning scheme of the Federal Rules. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). However, the Supreme Court has stated that "a finding [that counsel's conduct ... constituted or was tantamount to bad faith] ... would have to precede any sanctions under the Court's inherent powers." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also Chambers*, 501 U.S. at 47, 111 S.Ct. 2123. ("The narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a Court's orders..."). The Supreme Court has cautioned restraint in the exercise of the inherent powers "[b]ecause of their very potency," *Chambers*, 501 U.S. at 44, 111 S.Ct. 2123 and "[b]ecause inherent powers are shielded from direct democratic controls." *Roadway Express*, 447 U.S. at 764, 100 S.Ct. 2455. Accordingly, whether default judgment[2] or some lesser punitive sanction, such as an award of attorneys' fees,[3] is imposed under the inherent powers, courts require evidence of misconduct, usually characterized as "contuma-

---

2. *See, e.g., Shepherd v. ABC*, 62 F.3d 1469, 1477 (D.C.Cir.1995); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989); *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir.1976).

3. *See, e.g., Autorama Corp. v. Stewart*, 802 F.2d 1284, 1287–88 (10th Cir.1986); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir.1982).

cious," "fraudulent" or "bad faith," with some courts requiring that the misconduct be shown by "clear and convincing" evidence.[4] As will be more fully discussed below, this Court finds the sanctioning scheme of Rules 37 and 26 of the Federal Rules of Civil Procedure sufficient to redress the violations here without exercise of the inherent powers.

As to plaintiff's motions to compel and to test the sufficiency of the answers and objections to the request for admission, Fed. R.Civ.P. 37 governs both the entitlement to expenses and the amount of such expenses. If such a motion is granted, the Rule provides, in pertinent part:

> [T]he Court *shall* . . . require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the *reasonable expenses* incurred in making the motion, *including attorneys' fees, unless* the Court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's non-disclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A) (emphasis added). Where, as here, the motion is granted in part and denied in part, the court shall "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Fed.R.Civ.P. 37(a)(4). The Court has determined that there was no

substantial justification for Textron's non-disclosure, responses and objections and that there were no circumstances that made an award of expenses unjust.

Similarly, Rule 26(g)(3) provides, in pertinent part, that "if without substantial justification a certification is made in violation of the rule, the Court, upon motion or upon its own initiative *shall* impose upon the person who made the certification, the party on whose behalf the disclosure request, response, or objection is made, or both, an *appropriate sanction* which *may* include an order to pay the amount of *reasonable expenses* incurred because of the violation, *including a reasonable attorney's fee.*" (emphasis added). By its language, Rule 26(g)(3) does not limit a court to the award of expenses only, but gives the Court latitude to fashion an "appropriate sanction," in addition to an award of expenses. Nevertheless, an award of attorneys' fees appear to be the sanction most commonly imposed in reported decisions. *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 44(B)(3d. ed.2000).[5] The Court has determined that while counsel for Textron signed the various discovery responses,[6] counsel had not conducted the requisite "reasonable inquiry" and that the quality of the responses suggested an improper purpose, specifically "to cause unnecessary delay or needless cost of litigation." Fed.R.Civ.P. 26(g). Accordingly, there was no substantial justification for the certifications in violation of the rule. Thus, in the absence of certain findings

---

4. *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2nd Cir.2000); *Crowe v. Smith*, 151 F.3d 217, 239 (5th Cir.1998); *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir.1996). The Fourth Circuit has not yet spoken on the applicable burden of proof.

5. Notably, however, there are exceptions where courts have imposed fines or other monetary sanctions for Rule 26(g) violations. *See Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir.1997); *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 114–15 (D.Mass.1996) ($15,000 fine); *Perkinson v. Houlihan's/D.C., Inc.*, 108 F.R.D. 667 (D.D.C. 1985), *aff'd*, 821 F.2d 686, 689 (D.C.Cir.1987) (plaintiff's attorneys' fees and costs during much of litigation, not just fees and costs associated with discovery motion).

6. Messrs. Andrew Gendron and Dilip B. Paliath of Goodell, DeVries, Leech & Gray and Robert H. Buechele, Corporate Counsel–Litigation for Textron signed the answers to the plaintiff's Interrogatories. Andrew Gendron and Dilip B. Paliath signed the responses to Requests for Production of Documents. On October 1, 1998, Mr. Paliath (who was clearly the junior lawyer on the case) struck his appearance as he apparently left the firm, and Mr. Thomas M. Goss entered his appearance. Throughout the case, Mr. Gendron has acted as lead counsel. Mr. Goss entered his appearance well into the discovery period. Mr. Gendron defended the Textron corporate deposition. Accordingly, by the time Mr. Goss entered his appearance the vast majority of the sanctionable conduct had already occurred. Messrs. Gendron and Goss signed the Answers and Objections to Requests for Admissions.

(which the court does not make here), the rules direct the imposition of a sanction.

Following is a discussion of the violations found as a result of the several motions and the sanction appropriate to each violation.

### III. PLAINTIFF'S MOTION FOR DETERMINATION OF SUFFICIENCY OF ANSWERS AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR ADMISSIONS

■ Regarding plaintiff's motion for determination of the sufficiency of Textron's answers and objections to plaintiff's request for admissions, the Court finds under Rule 37, in conjunction with Rule 36, that Textron's responses or objections were not substantially justified. To the contrary, with one exception, the responses and objections appeared crafted to sabotage the legitimate use of request for admissions. Under the plain language of the rule, a party must *either* lodge an objection *or* an answer to a request, but cannot do both.

Pursuant to the requirements of Rule 36(a), the answering party that objects to a request for admissions does so at its own peril. That is, Rule 36(a) mandates that a *"matter is admitted unless* ... a written answer or objection" is served on the requesting party. (Emphasis added). Rule 36 also states, in detail, the requirements for denials, objections, partial admissions, and qualified answers. Failure to adhere to the plain language of this statute requires that the fact in question be admitted. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir.1981).

Rule 36 expressly permits a party to qualify an answer, but only "when good faith requires." *See Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D.Conn.1988) ("Though qualifications may be required where a request contains assertions that are only partially

correct, a reviewing court should not permit a responding party to undermine the efficiency of the rule by crediting disingenuous, hairsplitting distinctions whose unarticulated goal is unfairly to burden an opposing party.") (citations omitted); *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96 (W.D.Mo.1973) ("Such a qualification or part denial must be clear.").

In almost every response, Textron impermissibly lodged both an objection and an answer. Moreover, when Textron filed an answer, its complexity "undermine[d] the efficacy of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Thalheim*, 124 F.R.D. at 35 (citations omitted).

Accordingly, this Court believes the defendant's responses and objections lacked substantial justification. As the Court granted relief as to 12 out of the 13 contested requests (or 92% of the requests), the Court grants that percentage of the attorney time and expenses reasonably related to this motion. *See* Fed.R.Civ.P. 37(a)(4).

### IV. PLAINTIFF'S MOTION FOR SANCTIONS

In his motion for sanctions filed pursuant to Rule 37 and the inherent powers of the Court, plaintiff charged that defendant Textron engaged in "improper discovery tactics [which] were willful, inexcusable and not in good faith" (Paper No. 29) and asked for a finding of liability, or alternatively certain relief tailored to each of the alleged instances of discovery abuse. (*Id.*). The Court found that many of plaintiff's complaints of discovery abuse were meritorious, and ordered considerable relief in terms of further investigation and production of discovery responses.[7]

---

7. In this motion, Poole detailed for the Court a pattern of discovery misconduct by Textron and sought entry of default judgment. While some of the misconduct was the subject of a separate motion to compel production of documents and while the Court denied the requested relief for other of the conduct, the motion was effective in assembling in one submission multiple instances of Textron's resistance to legitimate discovery demands. Textron never made it easy. The motion made clear to the Court how the sum of the instances were indeed greater than its parts. While the Court decided that the extraordinary relief of entry of default judgment was not justified, the Court ordered measures to remediate as best as possible Textron's discovery failures, described in the motion.

## A. *Textron's Lack of Diligence in Providing Key, Requested Information*

■ The conduct this Court has found sanctionable violates Fed.R.Civ.P. 37, and, in some instances, Fed.R.Civ.P. 26(g) as well. Particularly egregious was Textron's lack of diligence in providing key, requested information, such as prior litigation involving the golf car model or testing whether in its response to requests for production of documents or its identification of designees for the corporation's deposition on these same subjects.[8]

8. In the body of this opinion, the Court discusses Textron's failure to produce key information in the areas of prior litigation, testing and design, in response to document requests or corporate deposition notice as particular egregious conduct, disabling plaintiff's prosecution of the product liability suit. However, the May 20, 1999 opinion found several other instances of discovery conduct, which indeed constituted a pattern of defense obduracy to legitimate discovery. In the prior opinion, the Court also found that Textron had provided a misleading, if not outright false, answer to an interrogatory regarding dynamic testing performed. Textron affirmatively and unequivocally stated that it had performed dynamic stability testing, that the GX–440 passed that testing, that there was no documentation of such testing but that "Don Thorpe, an E–Z–Go employee ... has personal knowledge of such testing." (Paper No. 29, Ex. W). In his deposition, Mr. Thorpe denied knowledge that either he or anyone else had done any dynamic testing on the GX–440. (Paper No. 29, Ex. R).

In reply, Textron stated that Mr. Thorpe may have misunderstood the term "dynamic testing," that Mr. Powell testified as to the type of "dynamic testing" that Textron does (not as would be described by an automotive engineer) and that plaintiff's counsel questioned Mr. Thorpe extensively about static stability testing. While plaintiff was plainly given inaccurate information regarding Mr. Thorpe's knowledge, plaintiff's counsel deposed him on issues other than dynamic testing and therefore his deposition was not totally useless and the Court denied the relief the plaintiff requested namely the cost of the Thorpe deposition. The Court was, however, concerned about Textron's failure to locate any documentation of the dynamic testing until plaintiff's search uncovered evidence of such testing. Testimony in prior cases has shown that dynamic testing was done and that persons other than Don Thorpe were involved and knowledgeable about it, making plain the falsity of Textron's answers to interrogatories. While the matter was later clarified, the answer demonstrated to the Court Textron's lack of adequate inquiry prior to filing discovery responses, to the detriment of plaintiff.

In the prior opinion, the Court also denied plaintiff's request for reimbursement for his expenses for an unproductive trip on a key subject to Textron's headquarters to review documents. While the Court did not find Textron's cumbersome system for document production to plaintiff's counsel sanctionable *per se,* that was largely because of counsel's failure to complain to the Court at the time, raising it only later in a laundry list of complaints. Nonetheless, Textron's protocol for document production, which denied plaintiff's counsel any direct review of files as kept in the ordinary business, required counsel to identify documents from a less than fully informative inventory of documents and restricted the production of documents to two at a time, seemed calculated to make the identification of relevant documents difficult at best.

In the prior opinion, the Court also found that Textron had concealed its possession of an exemplar golf car from plaintiff, ignoring counsel's inquiry, again putting plaintiff's counsel to additional effort and expense, finally locating his own model golf car for testing. Plaintiff asked defendant on July 31, August 20, and September 24 whether Textron had a 1988 GX–440 in its possession or control. On September 25, defendant finally advised that it did not. On October 20, the corporate designee and expert, Mr. Powell, testified in deposition that he did not have a 1988 GX–440 but he was continuing to look. In a November 20 deposition session of Mr. Powell, *after objections of defense counsel,* Mr. Powell admitted that he had located a 1988 GX–440. On December 1, 1998, plaintiff's counsel asked that her expert have an opportunity to inspect and test the 1988 GX–440 in its possession, which request defendant denied, advising her to file a motion to compel. In the December, 1998 status report to the Court, plaintiff's counsel stated her intention to file a motion to extend the discovery schedule solely for the purpose of having the opportunity to inspect and test the restored 1988 GX–440. (Ex. 2 to Paper No. 33). That motion was never filed. In a letter dated January 26, 1999, defense counsel informed plaintiff that "Textron also will not withdraw its objection to plaintiff's demand for an exemplar golf car under Request 22" and advised that "this too must be brought before the Court." (Ex. 8 to Paper No. 33). At the motions' hearing on March 26, 1999, plaintiff's counsel stated that she bought a 1988 GX–440 for $1,000.

In its opposition, Textron defended its failure to advise plaintiff of the location of a 1988 GX–440 or its denial of plaintiff's access to that GX–440 solely on plaintiff's failure to serve a "Rule 34 request for production of a 1988 GX–440." Given the repeated, written requests of plaintiff for a sample golf car and the broad language of the definition of "document" in plaintiff's request for production of documents which covered objects as well as written materials, Textron's position exalted form over substance and serves as another example of Textron's resistance to legitimate discovery requests.

### 1. Textron's Responses to Plaintiff's Requests for Production

This Court has concluded, as plaintiff states, that "Textron did not perform an even minimally-adequate search for documents prior to Plaintiff's Motion for Sanctions." (Paper No. 69 at 6). At the Court's request, Textron described its efforts to locate documents and information requested by plaintiff. (Paper No. 14). Review of Textron's seven page single space letter showed half-hearted, scatter-shot inquiries prior to the court-ordered investigation and inquiry efforts—often times only reacting to leads that plaintiff's counsel provided about Textron's prior litigation involving the same or similar golf cars or testing of the golf car type at issue. That letter did not dispel the Court's previously held impression that Textron's initial inquiry in response to written discovery requests (as well as Rule 30(b)(6) corporate designation) started and largely, if not entirely, stopped with an inquiry to Mr. Gerald W. Powell, a Textron reliability engineer and E–Z–Go's designee in golf car litigation since 1981 and with a review of the official corporate records of Textron.[9] It appears that Textron did not even contact its own employees in other corporate departments, such as the manager of Textron's Commercial and Media Relations, *see infra*, to respond to the document requests or requests attached to the corporate designee notice. While Textron did contact some prior counsel to locate documents in prior lawsuits (but not to prepare Mr. Powell to testify more knowledgeably on prior lawsuits), it appears that those contacts were in response to information that plaintiff's counsel provided, not the result of any systematic inquiry to fully answer the discovery.

 Plaintiff asserts that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's 'control' for the purposes of Rule 34." (Paper No. 29 at 27). This Court agrees.

Moreover, "[a] party is charged with knowledge of what its agents know or what is in the records available to it." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Practice and Procedure: Civil 2d, § 2177. It is well established that 'control' under Fed.R.Civ.P. 34 is to be broadly construed so that a party may be obligated to produce documents requested even though it may not actually possess the documents. *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 422–23 (N.D.Ill.1977). As long as the party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.' *See Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984); *The Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D.Colo.1992); *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J.1991); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989); *M.L.C., Inc. v. North American Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y.1986); *Hanson v. Gartland S.S. Co.*, 34 F.R.D. 493, 496 (N.D.Ohio 1964) (explaining that the determination of whether documents in the possession of a party's attorney are under the control of the party depends on the origin of the documents) (citing with approval to 4 Moore's Federal Practice 2471 (2d ed.1950)). It appears that Textron defined as documents within its "control" as whatever documents were within the files of Mr. Powell, longtime litigation point person for Textron and defined its "knowledge" as the personal knowledge of Mr. Powell. The lassitude of the defendant is unacceptable.

However, another and perhaps greater proof of the inadequacy of the initial inquiry was the productivity of the additional efforts mandated by the Court which conformed with the demands of the rules and case law on the level of inquiry and the broad defini-

---

**9.** Counsel's letter provided, *inter alia*, that pursuant to corporate retention policy, "with the exception of settlement agreements and releases, which it keeps for seven years, Textron keeps no legal records in excess of three years ... Therefore to the extent Textron has knowledge of [law] suits [filed more than seven years previously], it must rely on resources other than its corporate records. The chief resource in this respect [prior litigation] is the personal recollection of E–Z–Go Division's employee charged with coordinating litigation support ... Gerald W. Powell." (Paper No. 114, 2).

tion of "control" under Rule 34.[10] First, the sheer volume of documents produced *after* plaintiff's motions and court order compared to that produced in response to discovery demands under the rules demonstrates the inadequacy of Textron's initial efforts. Textron initially produced a single page in response to plaintiff's document request. (Paper No. 56, 2). After plaintiff served motions to compel and filed one such motion with the Court (which was granted), Textron produced a total of 470 pages of documents. (Paper No. 69, Ex. G at ¶ 3). After plaintiff filed his Motion for Sanctions, Textron produced 20 videotapes and more than 2,900 additional pages of documents that are responsive to the discovery requests. (*Id.*) Given the results of court-mandated efforts, it is clear that these documents were in the control of Textron and that a reasonable search would have located them.

Second, a review of Textron's responses to certain of plaintiff's specific discovery requests likewise demonstrates the lack of an adequate inquiry. For example, plaintiff had propounded a request for "[a]ll advertisements and promotional materials that concern or refer to the GX–440, X–440, GX–444, and X–444 for model years 1978 through 1990." (Request No. 23). Such documents would obviously be relevant to this case, as they would include, for example, photos and/or descriptions of reasonably anticipated uses of the golf cars, such as on grassy slopes similar to the one where plaintiff's accident occurred. In response, Textron produced a single brochure. (Paper No. 69, Ex. G at ¶ 3). When plaintiff moved to compel further production on the basis that it was inconceivable that Textron had only used a single brochure to advertise and promote its golf cars, Textron responded curiously that: "[a]n inspection of plaintiff's own exhibits demonstrates that Textron has already produced all such materials concerning this discontinued model line." (Paper No. 69, Ex. J at 14).

After the Court-ordered investigation, Textron produced 229 pages of advertising and promotional materials, (Paper No. 69, Ex. G

at ¶ 4), including photos of the golf cars on grassy slopes much like that on which the accident occurred here. Notably, the Affidavit of Textron's counsel states:

> Produced to plaintiff's counsel contemporaneously with the filing of this Affidavit are true and correct color copies of all documents responsive to Plaintiff's Document Request No. 23. I obtained the originals on Thursday, May 27th, from Ron Skenes, E–Z–Go's Manager of Commercial & Media Relations. Mr. Skenes advised me that he is the person in the Sales & Marketing Department most knowledgeable about historical advertising of E–Z–Go products. Mr. Skenes stated that he is the only person in the Sales & Marketing Department that keeps a file of old product advertising and promotional materials for the Marathon line of golf cars. However, the oldest material in his file goes back only as far as 1980.

Gendron Aff. at ¶ 44, (Paper No. 63, Ex. 3). No explanation is provided for why Mr. Skenes, the Manager of Textron's Commercial and Media Relations and thus an obvious person to ask to properly respond to a discovery request for advertising and promotional materials (or a corporate deposition notice covering advertising or promotional areas), was not contacted when the request was served. Such defense approach would have resulted in concealment of these relevant documents without the persistence of plaintiff's counsel.

Similarly, plaintiff had propounded a request for "[a]ll documents that reflect, refer or relate to any tests performed on or concerning the GX–440, X–440, GX–444, and X–444 that pertain to stability, safety, rollovers, and warning labels." (Request No. 16). Textron's first response was to object for a host of reasons, including that tests on golf cars other than the GX–440 are not relevant evidence. (Paper No. 69, Ex. J at 4–5). Plaintiff filed a motion to compel citing the considerable authority for discovery of tests on similar models in a products liability action.

---

**10.** The order outlined specific search efforts and required submission of affidavits on those search efforts. (Paper No. 57). Efforts were not limited to current Textron legal department employees or Textron's own files, but extended to all pertinent departments of Textron and to the files of agents of Textron, such as prior outside counsel and insurance companies. (*Id.*)

In response, Textron claimed that plaintiff's statement in his motion that Textron refused to produce the test documents pertaining to the X–440, GX–444, and X–444 was "a half-cocked statement" and that "plaintiff may not like the amount of Textron's document production, but she (sic) has all of the requested documents that Textron has." (Paper No. 69, Ex. J at 6–7). But, in response to this Court's Order, Textron has now produced a list of thousands of tests performed by its E–Z–Go Division (Paper No. 69, Ex. K), many appearing to be relevant such as "Golf Car Slope Limits" and "Spring Rate Reduction and Effects on Rolls." (Paper No. 69, Ex. K at 39). These additional tests, of course, were produced after much, if not all, of the discovery was complete, indeed after the discovery deadline.

■■■■ Rule 26(g) of the Federal Rules of Procedure defines the duty of counsel in responding to discovery requests. That is, counsel must make "a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." Advisory Committee Notes to 1983 Amendments to Rule 26(g). "What is reasonable is a matter for the Court to decide on the totality of the circumstances." *Id.*[11] "[U]nder Rule 26(g)(2) ...

[the subject of the inquiry] is the thoroughness, accuracy and honesty (as far as counsel can reasonably tell) of the responses and the process through which they have been assembled." (G. Joseph § 42(c), p. 541). In this case, it is clear that defendant's counsel did not make a reasonable effort under the Rule to assure that its client had complied fully with plaintiff's discovery requests and obtained all documents within its possession, custody and control.

### 2. Textron's Identification of Designee for Corporate Deposition

Fed.R.Civ.P. 30(b)(6) defines the duty of a corporation, like Textron, when served with a notice of deposition outlining areas of inquiry. The Rule provides that an organization named as a deponent "shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify ... a person so designated shall testify as to matters known or reasonably available to the organization." *Id.* Thus, a corporation "should make a diligent inquiry to determine what individual(s) is (are) best suited to testify." Civil Discovery Standards (American Bar Association, Section of Litigation, August 1999) ("ABA Standards").[12]

---

**11.** The objective standard requires that the attorney signing the discovery documents under Rule 26(g)(2) make only a reasonable inquiry into the facts of the case. Counsel need not conduct an exhaustive investigation, but only one that is reasonable under the circumstances. Relevant circumstances may include: (1) the number and complexity of the issues; (2) the location, nature, number and availability of potentially relevant witnesses or documents; (3) the extent of past working relationships between the attorney and the client, particularly in related or similar litigation; and (4) the time available to conduct an investigation. *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 691 (D.Kan.1996); *see also* 6 Moore's Federal Practice, § 26.154[2][a]. Here, the Court ordered the detailed, documented search it did in part due to its loss of confidence in the good faith efforts of defendant to that date.

**12.** The American Bar Association has adopted Civil Discovery Standards which articulate, with helpful specificity, the considerable duty of inquiry and preparation of a lawyer receiving a Fed. R.Civ.P. 30(b)(6) deposition notice, based on existing case law. The standards encourage communication between counsel to ensure that the

deposing party's areas of inquiry can be addressed. That standard provides in relevant part as follows:

> 19. Designations by an Organization of Someone to Testify on Its Behalf.
> * * *
> b. Designating the Best Person to Testify for the Organization. An entity, association or other organization responding to a deposition notice or subpoena should make a diligent inquiry to determine what individual(s) is (are) best suited to testify.
> c. More Than One Person May Be Necessary. When it appears that more than one individual should be designated to testify without duplication of the designated area(s) of inquiry, each such individual should be identified, a reasonable period of time before the date of the deposition, as a designated witness along with a description of the area(s) to which he or she will testify.
> d. Reasonable Interpretation Is Required. Both in preparing and in responding to a notice or subpoena to an entity, association or other organization, a party or witness is ex-

Moreover, a corporation served with a Rule 30(b)(6) notice of deposition has a duty to "produce such number of persons as will satisfy the request [and] more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989). "Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry." ABA Standards, 19(f) (Duty to Prepare the Witness). The individual(s) so deposed are required to testify to the knowledge of the corporation, *not* the individual. *United States v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996). *See also SEC v. Morelli*, 143 F.R.D. 42, 44 (S.D.N.Y.1992) (holding that Rule 30(b)(6) designees need not have first-hand knowledge of the events in question, but if designated must be adequately prepared to field and answer such questions). It necessarily follows that the corporation has a duty "to prepare the designees so that they may give knowledgeable and binding answers for the corporation" and that this duty "goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Taylor*, 166 F.R.D. at 361.

Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed.

Here, plaintiff made several requests in the form of interrogatories, requests for production of documents, a Rule 30(b)(6) corpo-

rate deposition notice and a subpoena duces tecum, for information relating to the following: (1) testing of the golf car (Exs. B, Request No. 6, and C, Interrogatory No. 7, to Paper No. 29); (2) all tort actions against Textron involving rollovers and complaints of instability of the golf car (Exhibit B to Paper No. 52); and (3) the design and testing of the GX–440 and any reports or investigations of accidents involving rollovers or stability problems (Ex. V to Paper No. 29). Nevertheless, when questioned in these areas, specifically about testing revealed in other litigation against E–Z–Go, the designee denied any knowledge of the testing or any recollection of the names of the attorneys involved in other cases. (Ex. S to Paper No. 29). Mr. Powell testified to having served as an expert witness in at least 21 of the 25 previous cases. (Paper No. 29 at 28). Nevertheless, Textron made no systematic effort to obtain or provide any information from those cases; curiously only following up on cases plaintiff was able to identify through his own independent efforts. Textron went so far as to claim, through its designee, that it did not know the names of its former attorneys. (*Id.*). Defense counsel also limited the witness' answers to his "personal knowledge." (Ex. S to Paper No. 29). But perhaps most troubling was Textron's indifferent attitude to areas that the designee could not cover. A party cannot take a laissez faire approach to the inquiry. That is, producing a designee and seeing what he has to say or what he can cover. A party does not meet its obligations under Rule 26 or 30(b)(6) by figuratively "throwing up its hands in a gesture of helplessness" as Mr. Powell, the corporate designee did in this case.[13] If the originally desig-

---

pected to interpret the designated area(s) of inquiry in a reasonable manner consistent with the entity's business and operations.

e. If in Doubt, Clarification Is Appropriate. A responding party or witness that is unclear about the meaning and intent of any designated area of inquiry should communicate in a timely manner with the requesting party to clarify the matter so that the deposition may go forward as scheduled.

f. Duty to Prepare the Witness. Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry.

13. Mr. Powell made several statements in deposition, indicating there were documents, but claiming no knowledge of how to access them. For example:

Q So I take it that the E–Z–Go Division doesn't keep records in accordance with model years so it's easy to get your hands on?

A Not according to model years. They do keep records, they just don't keep records the way people ask for records, if you understand. There are records there, I just don't know how to find them. I'm sure there are records there, I don't represent to you that there are, I feel like there may be some more things but I don't know how to find them.

nated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty. As the ABA Standards state:

> More Than One Person May Be Necessary. When it appears that more than one individual should be designated to testify without duplication on the designated area(s) of inquiry, each such individual should be identified, a reasonable period of time before the date of the deposition, as a designated witness along with a description of the area(s) to which he or she will testify.

19(c).

In light of plaintiff's considerable success in this motion, the Court will grant 75% of the attorney time and expenses related to the motion.

## V. PLAINTIFF'S MOTION TO COMPEL

The defendant's responses to plaintiff's document Request Nos. 16, 17, 18, 22 and 23 were not substantially justified. To the contrary, the Court determined that Textron had failed in its duty as prescribed under Rule 26(g). May 20, 1999 Mem. Op., 18–24. The Advisory Committee Notes explain that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26–37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to ... evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection ..." Fed.R.Civ.P. 26(g), Advisory Committee Notes to the 1983 Amendments. Under Rule 26(g), a "signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." (*Id.*)

(Paper No. 29, Ex. S, 44–45).

As discussed *supra*, there can be no more powerful proof of the inadequacy of the initial inquiry here than the comparison of the type and quantity of documents produced initially and those produced after the court ordered investigation, inquiry and report to the Court. This Court will not attempt to determine whether the fault lay with the client or with in house counsel or outside counsel. In any event, it should have been clear to outside counsel that the efforts were wanting given the paucity of documents produced. For example, in response to plaintiff's Request No. 16, only one document was produced in response to a request for all test results pertaining to the stability, safety rollovers and warning labels of the subject (and similar) model(s) of golf car. Or in response to Request No. 23 where only a single document was produced in response to a request for all advertisements or promotional materials regarding the subject (or similar) models of golf car for a 12 year period.

Accordingly, the Court finds that Textron's response to document requests violated its duty under Rule 26(g), was not substantially justified, and that therefore, an award of expenses is just. Fed.R.Civ.P. 37(a)(4)(A). Because the Court granted the motion as to five of the six contested requests (or 83% of the requests), the Court grants that percentage of the attorney time and other expenses related to this motion. *See* Fed.R.Civ.P. 37(a)(4).

## VI. AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS IS THE APPROPRIATE SANCTION

In an attempt to ward off any sanction, Textron represents to this Court that its counsel spent at least 154.6 hours on document collection and investigation efforts to comply with the Court's May 22, 1999 Order, at a cost to Textron of $23,260 (Paper No. 63 at 7), and argues that "it has now cured (at considerable expense) all deficiencies found by the Court and that an award of sanctions could, under the circumstances, be unjust." (*Id.* at 5). Such an interpretation of the rules would encourage sharp practices and

dilatory responses to legitimate discovery demands. If the only sanction for failing to comply with the discovery rules is having to comply with the discovery rules if you are caught, the diligent are punished and the less than diligent, rewarded. Indeed, Rule 37 itself defeats such an interpretation, as it provides, *inter alia*, that the Court shall award the moving party fees if the discovery is provided by ruling or simply after the motion is filed. Fed.R.Civ.P. 37(a)(4)(A).

■■■ This is clearly not a situation where justice should be tempered by mercy, given the comparative resources of the plaintiff and defendant, and the inescapable conclusion that Textron's stonewalling on discovery played on that disparity. Sanctions are to be awarded "against parties or persons unjustifiably resisting discovery." Advisory Committee Notes to the 1970 Amendments to Fed.R.Civ.P. 37. Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Likewise, "Rule 26(g) is designed to curb discovery abuse by explicitly encouraging imposition of sanctions." Advisory Committee Notes to 1983 Amendments to Fed.R.Civ.P. 26.

■■■ However, the Court declines to award sanctions beyond those provided in Rules 37(a) and 26(g) because this Court has stopped short of finding that Textron or its counsel acted with bad faith, and because Textron has not directly violated a court order, as it had in the case of *Winters v. Textron, Inc.*, 187 F.R.D. 518 (M.D.Pa. 1999).[14] In cases of bad faith, courts have ordinarily found direct (and often repeated) violation of court orders. *See Mutual Fed. Savings & Loan Assoc. v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir.1989); *see also Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 671–72 (7th Cir.1996). Significantly, none of the violations that plaintiff identified in his three discovery motions were of court orders. Rather, plaintiff complained of and the Court found that Textron had engaged in a pattern of conduct in discovery violative of the letter and the spirit of the discovery rules. In the absence of a bad faith finding, the Court is not justified in awarding sanctions beyond the relief afforded by Rule 37(a)(4)(A) and Rule 26(g), and certainly not entry of default judgment, as plaintiff repeatedly requested.[15] Moreover, with the exception of the Court's finding of a Rule 26(g) violation, for which imposition of an "appropriate sanction" is permitted (in addition to, or in lieu of an award of expenses), the individual discovery abuses represent violations of Rule 37(a)(4)(A), as Textron did not violate any order of the Court. The remedy available to the Court is thus limited to an award of the "reasonable expenses incurred in making the motion, including attorneys' fees." Fed.R.Civ.P. 37(a)(4)(A).

However, the fact that the Court did not find bad faith does not minimize the wrongheadedness of the conduct of Textron and its counsel or suggest lenience in the imposition

---

14. Where an order of court is violated, Fed.R.Civ.P. 37(b) expressly provides greater sanctions, including default judgment. This Court has stopped short of finding bad faith on the part of Textron or its counsel. Having said this, this Court nonetheless shares the *Winters* court's perception of Textron as "indifferent to its responsibility under the [discovery] law" and its discovery posture as suggestive of "arrogance." *Winters v. Textron, Inc.*, 187 F.R.D. at 521. Nevertheless, without a finding of bad faith or in the absence of violation of a court order, the remedy for Textron's Rule 37(a) violations are imposition of expenses and the remedy for Textron's Rule 26(g) violations are an "appropriate sanction," but certainly less than a finding of liability. Moreover, when ordered to conduct an effective Rule 26(g) investigation, Textron did a

creditable job, producing considerable documents, on a relatively short time frame.

15. The Fourth Circuit has established four factors that a court should consider when ordering a judgment by default against a party that has failed to comply with discovery. These factors are: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *See Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir.1977).

of the Rule-delineated sanctions. The Court recognizes there is an unquantifiable but real prejudice to plaintiff in the motions practice that Textron's conduct necessitated and the litigation disadvantages of the delayed and staged receipt of discovery that was its consequence. For example, depositions are taken without the benefit of later received discovery. That later received discovery might have eliminated whole areas of inquiry or suggested entirely different questioning at deposition. In that situation, a lawyer is faced with the dilemma of whether to spend the time and expense to seek another deposition session or "to make do." Or, belatedly received information may impact an expert's opinion, requiring additional analysis and a further report and even a further deposition.

Textron argues that its (costly) compliance with the Court's May 20 Order is "punishment" enough. The Court disagrees. A significant sanction award is crucial to vindicate the important principles of fair play in the largely private world of civil discovery. In complex litigation such as this, cases are shaped, if not won or lost, in the discovery phase. The rules of discovery must necessarily be largely self-enforcing. The integrity of the discovery process rests on the faithfulness of parties and counsel to the rules—both the spirit and the letter. "[T]he discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention and ... those Rules rely on the honesty and good faith of counsel in dealing with adversaries." *Hopei Garments (Hong Kong), Ltd. v. Oslo Trading Co.*, 1988 WL 25139 (S.D.N.Y., March 8, 1988). The rules of procedure (and attorneys' duty to adhere to them) apply with equal force to decisions made in private discussions behind closed doors in a client's office on how much effort to expend to answer the opposing party's discovery, as to

attorney conduct in the bright light of open court. Given the wealth and resources of Textron,[16] any sanction award is obviously more symbolic than retributive. It is intended as a reminder to counsel (both inside and outside) that their duty to the integrity of the judicial process in their discovery conduct trumps their desire to achieve some short run advantage for their clients through sharp practices and close readings of the rules. "If the primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse." Advisory Committee Notes to 1983 Amendments to Fed.R.Civ.P. 26(g).

Having rejected Textron's argument that its remedial efforts were a sufficient sanction, the Court will consider the appropriate amount of the sanctions award.

Rule 37 is straight-forward and directive: Courts "shall ... require ... the party or attorney or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees ... unless ... other circumstances make an award of expenses unjust." Similarly, Rule 26(g) provides that "[i]f without substantial justification a certification is made in violation of the rule, the court ... shall impose on the [attorney], the party ... or both, an appropriate sanction which may include an order to pay the amount of reasonable expenses incurred because of the violation, including a reasonable attorney's fee." Certainly plaintiff has the burden of proof of these reasonable expenses incurred in making the motion or, caused by the violation. However, this Circuit has not adopted any specific analytical approach to the determination of the amount of "reasonable expenses" under either rule.[17] Judge Kaufman

---

**16.** According to Textron's Company Profile located at its website, the company enjoys revenues of $11.6 billion. See Company Profile (visited 2/23/2000) <*http://www.textron.com/* profile/>. The revenues of the industrial segment of the company, which includes the Golf, Turf Care and Specialty Products division, comprises 39% of the company's total revenues. *See id.*

**17.** The Fourth Circuit has rejected the argument that "sanctions based in whole or in part on

attorneys' fees require the same procedures of discovery, briefing, and argument allowed in attorney's fees cases." *In re Kunstler*, 914 F.2d 505, 523 (4th Cir.1990). Accordingly, it is not surprising that while the Fourth Circuit has mandated the use of the 12 factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir.1974), in all attorney's fees cases, *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978). Use of this complex

of this Court ruled that Rule 11 analysis is applicable to the imposition of expenses for a violation of Rule 37(d) because "Rule 37, much like Rule 11, is designed to deter future misconduct during discovery." *Gordon v. New England*, 168 F.R.D. 178, 180 (D.Md. 1996). *Accord* Advisory Committee Notes to 1983 Amendments to Fed.R.Civ.P. 26(g) ("Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.") This Court agrees. "In calculating the sanction, a district court should bear in mind that the purposes of Rule 11 include 'compensating the victims of the Rule 11 violation, as well as punishing present litigation abuse, streamlining court dockets and facilitating court management.'" *In re Kunstler*, 914 F.2d 505, 522 (4th Cir. 1990). *Accord Wouters v. Martin Co., Fla.*, 9 F.3d 924, 933 (11th Cir.1993). ("Sanctions allowed under Rule 37 are intended to 1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney.") The amount of a monetary sanction, however, should always reflect the primary purpose of Rule 11—deterrence of future litigation abuse. *In re Kunstler*, 914 F.2d at 522–23. Similarly, Rule 26(g) was added by amendment in 1983 to provide "sanctions along the lines of Rule 11" for certifications in violation of the rule. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Practice and Procedure: Civil 2d § 2282.

The Fourth Circuit has enumerated four factors for the district court's consideration in determining the amount of an attorney's fee award under Rule 11: "(1) the reasonableness of the opposing party's attorneys' fees; (2) the minimum to deter; (3) the ability to pay; (4) factors related to the severity of the Rule 11 violation." *In re Kunstler*, 914 F.2d at 522–23. *Accord Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir.1991). The reasonableness of the attorneys' fees is to be subject to an "independent" analysis by the court, *id.* and necessarily requires a review of contemporaneous timesheets to insure that the time expended in the motion was not excessive to the task and (2) a consideration of the hourly rate charged in light of fees charged in the legal community for services of like kind and quality.

Based on its independent analysis, this Court has concluded that the attorneys' fees and other expenses requested are, in the main, justifiable. As to the time expended, while the Court invited comment, Textron did not identified any work as excessive or duplicative. While the total number of hours—260.4—and the attorneys' fees for those hours—$48,527—are staggering, review of the contemporaneous timesheets does not reveal any evident inefficiency or litigation overkill. Plaintiff's motions dealt with numerous disputes over a long discovery period. The complexity (and cost) of plaintiff's motions' effort could be seen as a result of Textron's obduracy on several discovery fronts. While multiple attorneys were engaged in the plaintiff's discovery motion efforts, the involvement of different lawyers of different experience levels is reasonable. Ms. Willis as a recent law graduate did most of the necessary research and initial drafting. Ms. McKee as the more experienced, lead counsel did the final drafting and engaged in most of the direct communications with the Court and counsel. It is clear that Ms. McKee consulted in a limited fashion with Mr. Goldstein, a highly experienced senior member of the firm, as would be expected in a discovery dispute of this sensitivity, complexity and contentiousness. Thus, this Court did not find any impermissible "overstaffing ... [or] overresearching." *Id.* The plaintiff properly mitigated. The Court also analyzed the work for which plaintiff's counsel sought fees and determined that payment was sought only for "attorney time ... in response to that which has been sanctioned." *Id.* Finally, the Court reviewed the time-

analysis has not been applied to attorneys' fees determinations in the sanctions context.

Moreover, the process afforded Textron comports with indeed Kunstler's exceeding minimal demands. The Court held two hearings and permitted submission of briefs and affidavits by defendant, to counter the plaintiff's affidavits on the appropriate hourly rate. The Court also invited defendant's comment on the plaintiff's counsel's contemporaneous timesheets.

sheets in light of the *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights Discrimination Cases of this Court* (Appendix B to the Local Rules of the District of Maryland), and reduced the attorney time in accordance with Rule 2(c)-(e), allowing recovery for only one attorney's time in client and third party conferences, hearings and intra-office conferences.[18]

As to the hourly rate, Textron vigorously challenges the rates sought by plaintiff: $240 an hour for Mr. Freeman admitted to the bar in 1986; $235 an hour for Ms. McKee admitted to the bar in 1985; $155 an hour for Ms. Willis admitted to the bar in 1995; $265 an hour for Mr. Goldstein admitted to the bar in 1973; and $75 an hour for paralegals.[19] Their affidavits demonstrate their admirable educational achievements and extensive experience. Their abilities are evident in the work in this case. Plaintiff has provided five affidavits from lawyers in the Baltimore legal community attesting to the customary rates charged for the same or similarly legal services in complex litigation. The rates sought here for plaintiff's four lawyers are within, with one or two exceptions, the rates attested

to in all plaintiff's affidavits.[20] While not by their terms applicable to attorneys' fees petitions in discovery disputes, the *Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases* of this Court (Appendix B to Local Rules of the District of Maryland) provide a presumptively reasonable range of hourly rates in civil rights and discrimination cases.[21] The rates for Messrs. Goldstein, Freeman and Ms. McKee exceed the highest presumptively reasonable fee for lawyers with greater than eight years experience which is $225, although it is acknowledged that they each had many more years legal experience, than eight.

Textron, on the other hand, has presented three affidavits of lawyers in the Baltimore legal community attesting to the customary rates charged for product liability cases or similarly complex litigation. These affidavits attest to rates primarily, if not exclusively, on the defense side, and to lawyers employed by insurance companies or large corporations. These rates for product liability defense ranged from $135 to $170 for lawyers with considerably more than eight years' experi-

18. While these Rules and Guidelines by their terms do not apply to attorneys' fees requests in discovery disputes, the Court utilized them here in light of the size of the attorneys' fee request. By this substantial sanction award, the Court intends to discourage discovery misconduct, not encourage the filing of discovery motions through the perception that a windfall award is likely.

In accordance with Rule 2(c)-(e) of the Rules and Guidelines (which allow compensation for only one attorney's time for client or third party conferences or intra-office conferences or attendance at hearings), the Court reduced the attorneys' time by 8.80 hours as to the Motion for Sanctions, by .40 hours as to the Motion to Compel, and by .20 hours as to the Motion For Determination of Sufficiency of Answers and Objections to Plaintiff's Requests for Admission.

19. Textron suggests that if plaintiff's counsel took the case on a contingent fee basis, counsel is entitled to a lesser hourly rate than requested. However, Textron has produced no case law that the fee arrangement that counsel has with its client has any bearing on entitlement to attorneys' fees under Rule 37 or Rule 26(g). Such a proposition would create the anomalous (and intolerable) situation of relieving a defendant of any penalty (or greatly reducing that penalty) for discovery abuse where representation was on a

*pro bono* or contingency basis or was by a government lawyer. Courts have rejected such an approach. *See, e.g., U.S. v. Big D Enterprises, Inc.*, 184 F.3d 924, 936 (8th Cir.1999) (Where an attorneys' fee award was made for the time expended by government lawyers in a discovery dispute, the Court held that "we have long recognized that the hourly rate of the local legal community may serve as a benchmark for determining the amount of attorneys' fees to be imposed upon a party.")

20. For example, Mr. Freeman's rate of $240 as a 1986 law school graduate was higher than the $210 rate charged for the services of an unnamed junior litigation partner in complex litigation at Shapiro & Olander. Or, Mr. Freeman's rate was the same as the high end of that charged by Gerard Martin, a 1981 law school graduate at Martin, Snyder & Bernstein. But overall, there was considerable support in the five affidavits for all the rates charged, including Mr. Freeman's.

21. The guidelines provide the following presumptively reasonable hourly rates:

$135–$170—attorneys with less than 8 years experience
$190–$225—attorneys with greater than 8 years experience

ence. Finally, at the hearing, Textron in-house counsel represented that Textron pays counsel in this case $150 an hour. Messrs. Goss and Gendron, defense counsel and members of the bar from 1981 and 1986 respectively, acknowledged this, but also stated that their hourly rate for other clients in other matters to be $200 an hour.

Having considered all the above information on the customary hourly rate for attorneys of the experience levels of the plaintiff's, the Court finds the following hourly rates for plaintiff's counsel to be reasonable: $265 for Mr. Goldstein; $225 for Mr. Freeman and Ms. McKee, $150 for Ms. Willis and $65 for the paralegals. The Court has lowered the hourly rate of some of the plaintiff's attorneys and both paralegals in light of the lower, presumptively reasonable range of fees in this Court's Rules and Guidelines, some of the lower rates submitted by plaintiff as they relate particularly to Mr. Freeman's hourly rate and most prominently the lower rates in Textron's affidavits, but recognizing, as plaintiff argues, that the significantly lower hourly rates of the product liability defense bar reflects the relative certainty of payment, the desirability of the client and the anticipated volume of work.

The other expenses appear reasonable in light of the Court's independent review of the documentation and in the absence of Textron's identification of any particular objectionable item of expenses.[22]

In reaching the amount of $37,258.39 in reasonable attorneys' fees and expenses, the Court has applied the "success" rate in each motion to the hours documented for each motion and multiplied by the hourly rate.[23] See Fed.R.Civ.P. 37(a)(4).

The *Kunstler* analysis does not, however, stop with the reasonableness inquiry. The next factor in determining the amount of the sanction is the "minimum to deter." *Id.* As discussed earlier, this Court has concluded that the goal of deterrence under Rules 26(g) and 37 can only be achieved by an award of all reasonable attorneys' fees and expenses associated with the three motions of plaintiff that Textron's conduct necessitated. A lesser amount would only encourage a repetition of this conduct by Textron or other major corporations.

As to the third factor of ability to pay, not surprisingly, Textron did not raise its inability to pay as a mitigating factor. Given Textron's wealth and revenue, *see supra*, this factor does not militate for a lesser monetary sanction than determined above as reasonable expenses, based on actual time expended and reasonable hourly rates. Similarly, defense counsel did not suggest any inability to pay if a sanction was awarded against them personally or their firm. Goodell, DeVries, Leech and Gray is an established and highly successful law firm and Messrs. Goss and Gendron are partners at that firm.

Finally, consideration of the severity of the violations as discussed *supra*, suggests no deviation from the reasonable expenses previously determined. While there was no direct or repeated violation of court orders, there was the pattern of delay, obfuscation and half-hearted responses to discovery which was disabling to plaintiff's prosecution of his case.

## VII. CONCLUSION

For all these reasons, the Court imposes a monetary sanction of $37,258.39 jointly and

$65—paralegals and law clerks.

**22.** The expenses consist of computer research, courier services and copying charges. The amount of computer research ($1,127.00), courier charges ($23.20), and photocopy charges ($1,040.00) are modest, in light of the extensive briefing. As to the photocopies, counsel billed the copying at the Rules and Guideline rate of $.15 per page.

**23.** As to the motion to compel, Ms. McKee's hours totaled 6.10 at the rate of $225.00 per hour for a total of $1,372.50. Ms. Willis' hours totaled 23.10 at the rate of $150.00 per hour for a total of $3,465.00. Ms. Fuller's hours totaled .20 at

the rate of $65.00 per hour for a total of $13.00. As to the motion for sanctions, Ms. McKee's hours of 107.10 totaled $24,097.50. Ms. Willis' hours of 60.00 totaled $9,000.00. Mr. Goldstein's hours totaled .30 at the rate of $265.00 per hour for a total of $79.50. Mr. Freeman's hours totaled 1.00 at the rate of $225.00 per hour for a total of $225.00. Mr. Johnson's hours totaled 11.60 at the rate of $65.00 per hour for a total of $754.00. Ms. Fuller's hours of 8.30 totaled $539.50. As to the motion to determine sufficiency of answers and objections to requests for admissions, Ms. McKee's hours of 5.70 totaled $1,282.50. Ms. Willis' hours of 26.80 totaled $4,020.00. Mr. Freeman's hours of .20 totaled $45.00.

severally against Andrew Gendron of Goodell, DeVries, Leech and Gray and Textron, Inc.[24] Mr. Thomas M. Goss is jointly and severally liable with Mr. Gendron and Textron for $4,206.24 of that $37,258.39, which are the fees and costs associated with the motion to determine the sufficiency of answers and objections to requests for admission.

Where, as here, a party has in-house counsel, the approach to discovery is rarely left entirely to outside counsel. Often defense strategy is largely dictated by the client's inside legal team. At a minimum, defense strategy is the product of the consensus of inside and outside counsel. Moreover, Mr. Buechele of Textron's legal department signed the responses to the plaintiff's interrogatories and participated in hearings on the telephone and in open court. Also, defense counsel suggested that the document production protocol was dictated by Textron. The Court will not attempt to determine how much fault lies with Textron and its inside counsel and how much fault lies with outside counsel. Accordingly, the award is joint and several

The Court takes no pleasure in the imposition of this considerable expense award against well known members of the bar and members of a respected Baltimore law firm. However, the Court cannot countenance the "business as usual" approach of counsel and client to the rules of fair play that our federal rules embody. counsel, or officers of the court owe a duty to the integrity of the process, just as surely as they owe a duty of zealous representation to their clients. Many fine defense counsel have accommodated their duty to the Court without sacrifice of their client's interest in a vigorous defense.

A separate Order will issue.

**24.** While the Court would have preferred to award the expenses against the firm and its client, the language of Rules 37 and 26 does not permit that. Unlike Fed.R.Civ.P. 11 which specifically authorizes the imposition of the sanction on the law firm, in addition to or in lieu of the individual lawyer, neither Rule 37 nor Rule 26 contains such a specific authorization. In light of that fact and the precedent of *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), this Court is constrained to award the expenses against the specific lawyers representing Textron and/or Textron itself.