Frederick Shaffer **HIGGINBOTHAM, III, DDS, et al., Plaintiffs,**

v.

**KCS INTERNATIONAL, INC.,**
t/a Cruisers Yachts, et
al., Defendants.

No. Civ.A. MJG–00–2764.

United States District Court,
D. Maryland.

Sept. 18, 2001.

Mark T. Mixter, Law Office, Baltimore, MD, for Frederick Shaffer Higginbotham, III, D.D.S.

Mary Malloy Dimaio, Maher & Associates, Kelly Reaver Benefiel, Towson, MD, for KCS International, Inc.

Daniel Karp, Law Office, J. Christopher Boucher, Law Office, Matthew Douglas Peter, Law Office, Baltimore, MD, for Windline, Inc.

Richard L. Nilsson, Brizendine, Bergen & Tripoda, Timonium, MD, for Warehouse Creek Yacht Sales, Inc.

## MEMORANDUM

BREDAR, United States Magistrate Judge.

On January 2, 2001, this case was referred to the undersigned for resolution of all discovery disputes (Paper No. 16). Plaintiffs allege that Defendants are liable for injuries Dr. Higginbotham sustained when the swim ladder on his yacht unexpectedly broke under his weight.

During pretrial discovery in this case, Plaintiffs' counsel, Mark T. Mixter, and counsel for Defendant Windline, Inc., J. Christopher Boucher, have conducted themselves improperly. Their interaction has been marred repeatedly by incidents of incivility. One example is a letter from Mr. Mixter to Mr. Boucher, in which he wrote:

> I am writing in response to your letter of May 31st. Your letter fell on deaf ears....
>
> Your statement about the June 4th deposition date and the allegation that you were not conferred with was an outright lie. We have notes in the file of numerous telephone calls that were made to all the lawyers' offices coordinating that date. Try again.

(Letter from Mixter to Boucher of June 13, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001.) Another example occurred during the deposition of an expert witness. Mr. Mixter suggested that the lawyers schedule a continuation of the deposition (Buchholz Dep. 71). When Mr. Boucher indicated that he might not agree to a continuation, Mr. Mixter stated in pertinent part,

> "Now we can do it the hard way or we can do it the easy way. I don't really—I mean, if you want to do it the hard way, I'm more than willing to go to the mats with you"

(Buchholz Dep. 72:5–8). Mr. Boucher responded,

> "Outside of gangster movies, I'm not familiar with the terminology hard way or easy way as you have utilized it today and previously."

(Buchholz Dep. 72:17–20). Such incivility violates Local Rule 606, which provides that "[t]he Court expects all of its judges and all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before the Court." D.Md.R. 606.

Counsel's lack of professionalism has not been confined to their communications, and their actions during the depositions of their respective expert witnesses now require the Court's direct and unambiguous disapproval. After a contentious dispute over the scheduling of depositions, Mr. Boucher incorrectly authorized his expert witness to walk out of his deposition before its conclusion, over the objection of Mr. Mixter. Then, three weeks later, in an express act of retaliation, Mr. Mixter directed his expert witness to walk out in the midst of his deposition, over the objection of Mr. Boucher and other counsel. Mr. Boucher's conduct is disapproved, and he is strongly cautioned not to make such a mistake in the future. Mr. Mixter's conduct was purely retaliatory, entirely knowing and purposeful and thus utterly out-of-bounds. His conduct warrants both a sanction and referral to this Court's Disciplinary Committee.[1]

### I.

Since the inception of this case, Mr. Mixter and Mr. Boucher have had difficulty conducting any form of discovery without intervention by the Court. When it became apparent that the relationship between them had deteriorated to the point where they were unwilling or unable to make good faith efforts to resolve their discovery disputes as required by Rule 37 of the Federal Rules of Civil Procedure and Local Rule 104.7, the Court took the unusual step of conducting a court-supervised discovery conference. At this conference, counsel were required to come to the courthouse for the day, to confer about and attempt to negotiate their many disputes, and then present any remaining disputes for resolution in a hearing before the Court. Little was accomplished during the day of "negotiations," and almost all of the disputes required resolution by the Court at

---

1. This is not Mr. Mixter's first display of poor professional behavior in this case. He has been admonished twice previously in relation to his conduct, once by the undersigned and once by Judge Garbis (Papers 76 and 85).

day's end. During the hearing, counsel accused each other of improper conduct in two depositions: Mr. Mixter said Mr. Boucher misbehaved during the deposition of Windline's expert David Buchholz on July 5, 2001, and Mr. Boucher said Mr. Mixter misbehaved during the deposition of Plaintiffs' expert Ken Court on July 24, 2001. Concerned that truly serious abuses of the discovery process may have occurred, I ordered counsel to deliver immediately copies of the deposition transcripts to my chambers. After reviewing the transcripts and related correspondence, and being deeply troubled by that which I read, I ordered counsel to appear at a hearing and show cause why the Court should not impose sanctions on them personally and/or refer them to the Court's Disciplinary Committee for further investigation of their conduct.

### 1. Dr. Buchholz's Deposition

Defendant Windline retained Dr. Buchholz, a neurologist, as an expert. In a letter dated May 11, 2001, Mr. Boucher advised Mr. Mixter as follows:

> Dr. Buchholz is available for the taking of his deposition on July 5, 2001 at 12:30 p.m. Could you please advise me at your earliest convenience if you would like to take his deposition on that date and how much time Dr. Buchholz should reserve for the taking of his deposition. He holds that much time available and will stop his testimony at that point.

(Letter from Boucher to Mixter of May 11, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001.)

In a letter dated May 15, 2001, Mr. Boucher wrote Mr. Mixter:

> This will confirm your paralegal, Margaret Graff's statement today to my secretary, in which Ms. Graff confirmed the deposition of Dr. Buchholz for July 5, 2001. She indicated that you will take no more than

one hour for Dr. Buchholz' deposition and the deposition will be concluded when one hour has elapsed. If this is incorrect, please let me know immediately so that we can advise Dr. Buchholz he needs to keep more than one hour available.

(Letter from Boucher to Mixter of May 15, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001.)

The next day, Mr. Boucher sent Mr. Mixter another letter via facsimile in which he noted that the latter had not confirmed how much time he wanted for Dr. Buchholz's deposition and asked him to provide such information as soon as possible (Letter from Boucher to Mixter of May 16, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001).

On or about May 21, 2001, Mr. Mixter sent a notice of deposition and subpoena to Dr. Buchholz commanding him to appear for a deposition at 12:30 p.m. on July 5, 2001.[2] The notice stated that the deposition would "continue from day to day until complete" (Show Cause Hearing, Boucher Ex. 2).

On May 25, 2001, Mr. Boucher sent Mr. Mixter another letter, which stated in pertinent part:

> Because the only thing we have heard from you as to the time you will need to take Dr. Buchholz' deposition is that you only need one hour, we will notify Dr. Buchholz that you will reserve less than one hour to depose him. We will note for the record that the deposition will be concluded when one hour has elapsed.

(Letter from Boucher to Mixter of May 25, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001.)

In the postscript of a letter dated May 29, 2001, Mr. Mixter responded to Mr. Boucher's letter of May 25, 2001, by stating that "Dr. Buchholz' deposition will be conducted in accordance with the notice of deposition and the *Varner* decision [3] previously forwarded to

---

**2.** The Court takes this date from the cover letter from Mr. Mixter to Dr. Buchholz that was entered into evidence, along with copies of the notice and the subpoena, as Boucher Exhibit No. 2. It could not ascertain the dates the notice was served or the subpoena issued from the copies of the documents themselves because the copies did not contain Mr. Mixter's signature or the date. Indeed, Mr. Mixter frequently provides copies of

documents to opposing counsel and the Court that were made before he signed and dated the documents, leaving the Court and opposing counsel unable to ascertain from the copy whether he signed and dated the original or what the date was. In the future, Mr. Mixter shall copy the documents after they are signed and dated.

**3.** According to Mr. Mixter, this refers to a decision in a case titled *Greater Washington Ortho-*

Dr. Buchholz (copy enclosed) and the applicable Rules of Procedure governing expert depositions, their allowable fees and the like" (Letter from Mixter to Boucher of May 29, 2001, *appended to* Letter from Mixter to Bredar, J., of August 1, 2001).

The deposition of Dr. Buchholz commenced at 12:32 p.m. on July 5, 2001. Immediately after it began, the following exchange took place:

MR. BOUCHER: The only thing I just wanted to put on the record at the outset is that we've confirmed several times that the deposition will have a duration of one hour and will be concluded at the expiration of one hour.

MR. MIXTER: The notice controls and it's continuing in nature, but I will do the best that I can, but I didn't promise you anything about an hour.

(Buchholz Dep. 4:14 – 5:1.) After approximately an hour of questioning by Mr. Mixter, Dr. Buchholz indicated he had to leave. The following discussion ensued:

MR. MIXTER: I never agreed—I want to put it on the record. I've never agreed to an hour deposition. The notice is what it is, the rules are what they are, and they are always continuing in nature. If we're going to abort this thing, I will tell you candidly that I will have to involve the Court and what I will ask is, because I never agreed to it, that the Court impose costs and fees upon whoever they feel is appropriate for making us do it twice. I will be glad to do that, but I really don't want to. I'm here to finish this thing and I'll probably be done within a half hour, maybe less, but I will leave it up to you what you want to do.

MR. BOUCHER: Well, just for the record, Doctor, you may go whenever you're ready, but—

THE WITNESS: I'm sorry, I do have to.

MR. BOUCHER: This was the subject of—

MR. MIXTER: May I ask, do you have another appointment?

THE WITNESS: I have other obligations, yes.

MR. MIXTER: Professional?

THE WITNESS: Yes.

MR. MIXTER: You understand that by doing so that you run the risk that the Court could impose, either on you or Mr. Boucher[ ]—let me finish, Mr. Boucher, because I'll give you, extend the courtesy to you of allowing you to finish your speech.

I have never agreed to an hour deposition, the notice controls and the rules are clear that deposition testimony is continuous until completed subject to local rules which puts certain hour limits which are far beyond an hour obviously.

With that in mind, and you should also know there has been repeated acrimony in this case between Mr. Boucher and myself and our clients. I don't think the same is true for myself and the other two defendants, and Judge [Bredar] and Judge [Garbis] are keenly aware of that. And I am saying on the record right now, I was not going to be hamstrung by Mr. Boucher's contorted efforts to try to force me to commit to a specific time frame for this deposition because frankly, that would be, I would have to be clairvoyant to do that, but that the notice is clear, the rules are clear, and I am here to complete it. If I'm unable to complete it, I will have to seek sanctions from the Court from whoever for having this aborted before it's completed.

THE WITNESS: I understand.

. . .

MR. MIXTER: Let me ask one other thing before you go out the door. Are you opposed—I'm just trying to resolve this thing without the need for court intervention and a lot of unnecessary paper work. Are you opposed to just coming back to finish the deposition?

THE WITNESS: Absolutely not.

MR. BOUCHER: Thank you, Doctor.

*paedic Group, P.A. v. Varner,* which sets forth a method of payment for time that an expert spends testifying at a deposition (Def.'s Submission per Ct.'s July 30, 2001 Order, Ex. J., Letter from Mixter to Buchholz of May 21, 2001). A search of a legal database has uncovered no published opinion with this title.

(The witness exited the room.)

(Buchholz Dep. 65:13 – 68:19.) Messrs. Boucher and Mixter continued to argue after the deponent left. Their argument filled more than eleven pages—or roughly one-seventh—of the deposition transcript. At the court-supervised discovery conference, Mr. Boucher opposed Mr. Mixter's request to reconvene the deposition.

## 2. Mr. Court's Deposition

Plaintiffs retained Mr. Court as an expert in naval architecture and marine engineering. Mr. Boucher noticed the deposition of Mr. Court for 9:30 a.m. on July 24, 2001, and sent subpoenas to him requiring him to appear at that time (Show Cause Hrg., Boucher Ex. 3). In a letter dated June 27, 2001, Mr. Mixter asked Mr. Boucher to reschedule the deposition for 2:00 p.m. on July 24 because he had a deposition in another case scheduled for that morning (Show Cause Hrg., Joint Ex. 1, Letter from Mixter to Boucher of June 27, 2001). Mr. Boucher responded in a letter dated June 29, 2001. He stated that he would reschedule the deposition based on the "strict condition[ ]" that "Mr. Court ... make himself available for as long as it takes for his deposition to be concluded" (Show Cause Hrg., Joint Ex. 1, Letter from Boucher to Mixter of June 29, 2001). He repeated that the deposition would not be rescheduled "unless ... we obtain Mr. Court's written agreement to appear at 2:00 p.m. on July 24, 2001 and his agreement to stay as long as it takes if we start at that hour to complete his deposition" (*Id.*).

Counsel discussed the duration of Mr. Court's deposition on the record at the conclusion of Dr. Buchholz's deposition on July 5, 2001. The exchange that follows occurred during the argument about whether Mr. Mixter was entitled to depose Dr. Buchholz for more than one hour:

MR. MIXTER: I will expect to hear from you within the balance of the week as to the precise amount of time you wish to set aside for deposing Mr. Cort [sic] and the physicians whose depositions you have noted from West Virginia, all of whom are experts for the plaintiffs. And I will assume if I don't hear to the contrary, that you will only need an hour to do each of those.

MR. BOUCHER: Well, number one—

MR. MIXTER: Since that seems to be the way you operate and you seem to think that's the way the rules, what the appropriate procedure is for these sorts of depositions, what I suggest to you is not.

(Buchholz Dep. 77:2–16.)

In a letter dated July 6, 2001, Mr. Mixter notified Mr. Boucher that Mr. Court was available to be deposed at 2:00 p.m. on July 24, 2001 (Show Cause Hrg., Joint Ex. 1, Letter from Mixter to Boucher of July 6, 2001). In that letter, Mr. Mixter asked Mr. Boucher to "[p]lease advise as to the amount of time Mr. Court should set aside for his deposition" and stated that "[o]therwise, we will assume an hour ... is sufficient" (*Id.*).

The following week, Mr. Boucher responded to this letter. He noted that Mr. Court himself had not said that he was only available for an hour (Show Cause Hrg., Joint Ex. 1, Letter from Boucher to Mixter of July 13, 2001). Mr. Boucher accused Mr. Mixter of attempting to limit the length of the deposition in retaliation for the fact that Dr. Buchholz walked out of his deposition after an hour. Mr. Boucher explained that he did not know how long the deposition would last and that he was entitled to as many as seven hours. He stated:

[P]lease plan to have Mr. Court available for as much time as it takes to complete his deposition on July 24, 2001. There is no basis for you to assume that the time limit for any of your experts' depositions will be one hour.... This will confirm that there is no such understanding with respect to your experts' depositions. Instead, they will be made available for as long as it takes to complete their deposition, obviously within the realm of reasonableness.

(*Id.*)

In a letter dated July 23, 2001, the day before Mr. Court's deposition, Mr. Mixter responded:

All I can glean from your three page letter ... is that you must believe that your experts' time is more valuable than my experts' time. To the contrary, my experts' time is very valuable and therefore,

as your expert did, they need to know how much time you wish to have them set aside for purposes of their depositions. This is exactly the position you took with respect to Dr. Buchholz' deposition. If you choose not to designate a specific time for each such expert's deposition, we will assume one hour is satisfactory as you did with Dr. Buchholz. Thus, each of the expert depositions will conclude at the expiration of one hour. This would include the deposition[ ] of Mr. Court.... Otherwise, we await your advice as to the number of hours you estimate will be needed for each such deposition and assurance of payment for the time allocated in each instance.

(Show Cause Hrg., Joint Ex. 1, Letter from Mixter to Boucher of July 23, 2001.) Mr. Boucher responded by letter the same day. In his letter, Mr. Boucher reiterated that he was entitled to seven hours and stated, "I respectfully request that you do not attempt to prevent the complete deposition of Mr. Court tomorrow" (Show Cause Hrg., Joint Ex. 1, Letter from Boucher to Mixter of July 23, 2001).

At 9:30 a.m. on July 24, 2001, the time that the notice and subpoena commanded Mr. Court to appear, Mr. Boucher directed a court reporter to appear at the place of deposition and record his statement that he was ready to proceed at that time. As far as Mr. Boucher was concerned, there was no agreement to delay the start of the deposition because Messrs. Mixter and Court had never agreed that the late start would not preclude a full, day's-length deposition. (Def. Windline's Submission Per the Ct.'s July 30, 2001 Order, Ex. H.)

The deposition began at 2:00 p.m. (Court Dep. at 1). After some time had passed, Mr. Mixter began to make an objection and the following exchange occurred:

MR. BOUCHER: If it's going to be a speaking objection, we're going to have to ask the witness to leave.

MR. MIXTER: I actually want to go to the bathroom. But I also want to know how much longer you'll be, because I've already allowed you to go a half hour longer I intended [sic].

MR. BOUCHER: I told you I needed as long as—we are entitled to seven hours. I think by rescheduling this I don't think

that we can go much longer than four hours without people wanting to continue it.

MR. MIXTER: You set the rules with Dr. Buchholz, and I've allowed you a half hour beyond what our correspondence indicated. So if you want to give me a reasonable indication of how much longer you think you'll be to complete the deposition, I'll consider the possibility of letting you go beyond right now. If you don't want to do that and be reasonable about how much longer you're going to be, as opposed to asking the same question, which actually calls for a legal conclusion and has absolutely nothing to do with this case, over and over and over again, then I think we'll pack it up and leave, much like you did with Dr. Buchholz. I'll leave it up to you.

(Court Dep. 68:4 – 69:9.) At this point, Mr. Boucher attempted to distinguish the situation with Mr. Court from the situation involving Dr. Buchholz, emphasized that he had stated in his correspondence that he would not accept any limitations on the duration of the deposition, and responded to Mr. Mixter's contention that he had repeatedly asked Mr. Court the same question. He then offered to take a break for Mr. Mixter to use a restroom. The exchange resumed as follows:

MR. MIXTER: We are going to take a break and leave. But I'm going to ask one more time, and if you choose not to answer the record will speak to that. How much longer are you going to be with him?

MR. BOUCHER: This issue, Mr. Mixter—

MR. MIXTER: I'm asking you one question. How much longer? You can say I'm not going to tell you, or you can tell me how long. That's all I'm asking. How much longer will you be?

MR. BOUCHER: Mr. Mixter, this issue of the length of the deposition has been talked about more than it possibly should.

MR. MIXTER: Let me make my speech. My speech is that you unilaterally chose to schedule Mr. Court's deposition today without conferring with the calendar.

Fortunately, I was available this afternoon but not this morning because of plaintiff's deposition in another case. I made that clear in correspondence to you. I never acceded to your demand that this deposition be subject to your condition precedent, as you described. But I'm only following the rules as you set them for the deposition with respect to Dr. Buchholz. I made it clear in my correspondence back to you that I would take as long as I needed to complete Dr. Buchholz's deposition, and despite that, when I arrived, actually after the deposition had ensued of Dr. Buchholz, you aborted it after an hour. And, actually, I was only allowed an hour to the minute when, in fact, the deposition did not start until several minutes after the hour it was scheduled to start, which was no fault of mine because I was there 15 minutes early. It was interrupted on a couple of occasions by the doctor's secretary. And here today, I've allowed you to go a full half hour beyond the hour that I indicated I would, much like with Dr. Buchholz, allow you to depose Mr. Court absent some representation of what, as you asked of me with Dr. Buchholz, how long it would take to depose Dr. Court. I've reiterated the offer while I'm here today to allow you to complete the deposition within reason, with some representation of how long we're going to be and you've chose not to make a response to that. So with that, as you did with Dr. Buchholz, this deposition is over.

MR. NILSSON [4]: Why is it that you need to know how long it's going to take?

MR. MIXTER: Because I want to make sure, as he did, that there is going to be payment for the time that he's allotted for the deposition and he has other commitments, and could not plan accordingly because Mr. Boucher would not give him some sort of reasonable estimate on how long it would take, and that was the quarrel he had with Dr. Buchholz. Dr. Buchholz's time was so incredibly valuable that he needed to plan his day accordingly. Mr. Court's time is equally valuable and he needs to plan his day

accordingly, and without being able to do so this is the time we've allotted.

Q. What other commitments do you have today, Mr. Court?

MR. MIXTER: You don't have to answer that. That's not what you're here for today. You're here to testify about your opinions and the basis them [sic].

Q. What other commitments do you have, Mr. Court?

MR. MIXTER: Don't answer the question.

Q. Mr. Court, you were served with a subpoena from the United States District Court—

MR. MIXTER: So was Dr. Buchholz.

Q.—for the District of Maryland, and a notice of deposition. You were personally served. In fact, you told the person that served you that you'd be there and you'd be available. Your counsel, counsel for the party that you're testifying on behalf of, then asked as a matter of courtesy, that that be moved to 2 o'clock. To accommodate the counsel who obtained you, we moved it to 2 o'clock, subject to the strict condition precedent that you would be made available for as long as it possibly took to complete your deposition. [Mr. Boucher then discussed the letter from Mr. Mixter to him dated June 27, 2001, and the letter he sent Mr. Mixter dated June 29, 2001.] You mentioned that you left Easton this morning at the 9:30 AM, Mr. Court, for the purposes of taking this deposition. You met with Mr. Mixter at 1 o'clock after taking about an hour beginning at 12 o'clock, to confer your notes. [Mr. Boucher then summarized the letter from Mr. Mixter dated July 6, 2001, the letter he sent to Mr. Mixter dated July 13, 2001, and one of the letters dated July 23, 2001.] This morning at 9:30, I made a record of the fact that I was there and

---

4. Richard L. Nilsson is counsel for Defendant Warehouse Creek Yacht Sales, Inc.

ready to proceed with the deposition. At that time—

MR. MIXTER: This morning at 9:30 you commandeered a court reporter—

Q.—the notice of deposition—

MR. MIXTER: Mr. Boucher—

Q.—and subpoena called for this to happen, and that I was—

MR. MIXTER: Are you telling me that after an agreement was reached for the time of the deposition—

Q.—I was going to continue this deposition at 2 o'clock—

MR. MIXTER: I'm going to interject something now.

Q.—and mark the exhibits, so that if it was necessary—

MR. MIXTER: You proceeded with a court reporter—

Q.—if it was necessary, we would be able to confirm that, indeed, this occurred subject to Exhibit 1 through 7, based upon Mr. Mixter's request, and that was accommodated.

MR. MIXTER: Who was your court reporter this morning, Mr. Boucher?

Q. Now, Mr. Court, you have been subject to a federal subpoena.

MR. MIXTER: Mr. Boucher, who was your court reporter this morning?

Q. You've been given a witness fee. All the procedures have been complied with, Mr. Court. If you chose [sic] to walk out that door, you are defying a subpoena and notice of deposition to appear for deposition—

MR. MIXTER: He's leaving on my advice. Fine.

Q.—in federal court. And you do so—this gentleman does not represent you, Mr. Court. Mr. Mixter represents his own client. You have to look out for your own interest, and you can do whatever you wish to, sir, but you do so with the full knowledge that you're under federal subpoena and notice of deposition.

I'm ready to proceed with the deposition.

MR. MIXTER: Mr. Boucher, since you proceeded with a proceeding in this case ex parte with a court reporter this morning, I'm going to ask you one last time for the identity of the court reporter you utilized this morning. Was it someone from Court Reporting Concepts as is the lady that is here this afternoon?

MR. BOUCHER: I'm ready to proceed with the deposition.

MR. MIXTER: We're out of here. Come on, Mr. Court. You're refusing to tell me what the name of the court reporter was that you utilized in a proceeding in this case ex parte without the knowledge of the other counsel and with a letter of understanding that this deposition was beginning at 2, you made a record in this case at 9:30 without notifying anybody. Is that correct, Mr. Boucher? Assuming that you won't respond to it that the answer is obviously yes, since you've already represented that on the record.

Q. I'm ready to proceed, Mr. Court.

(Court Dep. 72:18 – 81:20.) At this point, it appears that Mr. Mixter and Mr. Court left.

MR. BOUCHER: I will put on the record that Mr. Mixter and Mr. Court left, obviously.

MR. NILSSON: I will put on the record that although I did not note the deposition of Mr. Court, I think as a party I have a right to ask some questions, I didn't have very many, so I have to object to his leaving as well.

MS. DIMAIO [5]: Same objection here. We were all ready to go today.

(Court Dep. 81:21 – 82:8.) Shortly thereafter, the deposition was suspended. The time was 3:50 p.m. (Court Dep. 84:9.) Counsel's argument about these collateral matters filled fourteen pages—or one-sixth—of the transcript.

## II.

The procedures that parties and counsel are to follow in scheduling and conducting depositions are set forth in the Federal Rules of Civil Procedure and the Local Rules established by this Court. In an effort to assist counsel in matters not directly addressed by the text of these rules, the Court has adopted

---

5. Mary Malloy Dimaio is counsel for Defendant KCS International, Inc.

Discovery Guidelines. *See* D.Md.Rs. app. A (2001). Additionally, this Court and other federal courts have published opinions that discuss the duties of counsel in depositions. In short, there is a substantial body of authority that sets forth the procedure to be followed with regard to depositions. The Court required counsel to show cause why they should not be sanctioned because counsel disregarded this procedure, in some instances flagrantly.

Even with these sources of authority to provide guidance, discovery disputes are bound to arise. There are correct and incorrect ways to resolve such disputes.

First of all, to minimize the occurrence of disputes, the rules set forth procedures for making discovery requests and for complying with those requests. As officers of the court trained in the law, lawyers ordinarily are expected to follow the rules without the need for intervention by the Court. Experience has shown, however, that lawyers sometimes *initially* take positions that are contrary to clearly established law. Although not ideal, this is somewhat inevitable in our adversarial system. Lawyers sometimes fail to carefully consider relevant rules or cases and, consequently, take legally unsupportable positions. In such instances, it is not usually necessary to involve the court. Just as courts benefit from hearing opposing views on an issue, lawyers can benefit by hearing the view of opposing counsel on their discovery dispute. By conferring with opposing counsel before bringing a dispute to the court, many a lawyer has realized that he or she is mistaken and either abandoned his or her position or modified it to adhere to the governing law.

Such open-minded discussion benefits the lawyers, their clients and the court. The lawyers are spared the embarrassment of making clearly erroneous arguments. The clients are spared needless expense incurred in the litigation of discovery disputes and the attendant delay. The Court is able to devote more time and resources to closer questions of law. Recognizing these benefits, the drafters of the rules included provisions requiring counsel to confer in good faith in an effort to resolve their discovery disputes before filing motions with the Court. *See* Fed. R.Civ.P. 37(a)(2)(B); D.Md.R. 104.7.

Where the lawyers are unable to resolve their disputes through good faith discussion, however, the aggrieved party must seek a ruling from the Court. *See* D.Md.Rs. app A, Discovery Guideline 1.d (providing in pertinent part that "[i]n the event that . . . good faith efforts [to resolve disputes without the need for intervention by the Court] are unsuccessful, the disputes should be referred promptly to the Court for resolution").

In short, lawyers are expected to make sincere efforts to resolve disputes among themselves and, if unsuccessful, to carefully assess the requirements of the applicable rules and promptly seek relief from the Court if necessary. It is with this framework in mind that I summarize briefly the errors made by counsel and then consider their conduct in more detail.

**1. Dr. Buchholz's Deposition.** Mr. Boucher appropriately and repeatedly attempted to obtain from Mr. Mixter an estimate of the duration of Dr. Buchholz's deposition. Mr. Mixter should have responded directly to these reasonable inquiries but failed to do so. Instead, Mr. Mixter's only response was a postscript in a letter to Mr. Boucher in which he stated that the deposition was to proceed according to the applicable rules and the notice of deposition. This oblique response fell short of the good faith effort that the Court expects counsel to make to resolve discovery disputes. Mr. Boucher, however, erred (1) by failing to realize that the notice of deposition, which Mr. Mixter cited in his letter, called for the deposition to continue until complete and (2) by assuming that this notice and the subpoena had been modified based only on an alleged oral communication from Mr. Mixter's paralegal to Mr. Boucher's secretary that the Buchholz deposition would take an hour and Mr. Mixter's failure to respond directly to his letters regarding the length of the deposition. Mr. Boucher had sufficient doubts about whether Mr. Mixter would limit the deposition to an hour that he stated his understanding of this matter on the record immediately after the deposition began. In the absence of a firm indication from Mr. Mixter that the time limitation was acceptable, Mr. Boucher, after making sincere efforts to obtain an estimate

of the deposition's duration but well before the deposition was scheduled to commence, should have filed a motion to modify the subpoena and notice of deposition to limit its length to one hour. At the deposition, Mr. Boucher inappropriately told Dr. Buchholz that he could leave even though the notice of deposition and accompanying subpoena required him to remain until the deposition concluded. Mr. Boucher compounded his error by later opposing Mr. Mixter's efforts to reconvene and complete the deposition.

■ **2. Mr. Court's deposition.** In response to Mr. Mixter's repeated statements that Mr. Court's deposition would be limited to an hour if Mr. Boucher did not provide an estimated duration, Mr. Boucher repeatedly asserted that he was entitled to depose him for as long as seven hours and refused to estimate the length of the deposition. Mr. Boucher should have provided such an estimate. At the deposition, Mr. Mixter, who had argued that the rules and the notice of deposition controlled the length of Dr. Buchholz's deposition, disregarded those rules and the notice and instructed Mr. Court to leave before the deposition was complete.

3. **General Analysis** Although both attorneys inappropriately instructed their experts to leave the depositions, Mr. Mixter's conduct was more egregious because he purposefully disregarded the rules to retaliate against Mr. Boucher whereas Mr. Boucher's errors stemmed more from an erroneous application of the rules. I discuss their conduct in more detail below.

The dispute over the duration of Dr. Buchholz's deposition arose from a "policy" that Dr. Buchholz has sought to impose upon lawyers who take his deposition for a case in which he has been retained as an expert. Under this policy, Dr. Buchholz requires the attorney seeking to depose him to reserve a set amount of time. Dr. Buchholz then makes himself available for that length of time and expects to be compensated for the entire time period reserved, even if the deposition ends before the time has elapsed. In a letter to Mr. Boucher dated August 3, 2001, Dr. Buchholz asserted that he is entitled to be compensated for all the time reserved, even if it is not used, because he was unable to schedule other matters during that time (Show Cause Hrg., Boucher Ex. 1, Letter from Buchholz to Boucher of August 3, 2001).

Although this arrangement is no doubt convenient and lucrative for Dr. Buchholz, it is not authorized by the applicable rules. Local Rule 104.11.b provides in pertinent part that a party noticing the deposition of a *treating physician* must notify him or her of the number of hours required for the deposition and that the treating physician may terminate the deposition when the estimated time has elapsed. It could be read to say that a treating physician may charge for the entire time reserved. The rule mentions only "treating physicians," however, and does not apply to retained experts like Dr. Buchholz. Indeed, it seems somewhat incongruous to permit experts to require a party to "reserve" their time and then charge for time not used when lay witnesses—whose time is also valuable and who often forego income to comply with a notice of deposition and subpoena—receive no such consideration. Dr. Buchholz's policy of requiring a party deposing him to reserve his time and then leaving when that time has elapsed is not a creature of the rules.

■ Although not strictly mandated by the rules, the lawyer taking the deposition should recognize that a deponent's time is valuable and try to minimize the inconvenience to the deponent by supplying a good faith estimate of the duration of the deposition. Providing such an estimate is not only a matter of courtesy; it also preserves judicial resources and the resources of the litigants by eliminating the need for the deponent to ask the Court to modify the subpoena or notice to limit the duration of the deposition. Understandably, attorneys may be reluctant to provide such an estimate because of the possibility that the deposition will last longer than anticipated and they will lose the opportunity to ask questions after the estimated time elapses. The answer to this problem is that when an attorney accommodates an expert for the other side by providing a good faith estimate of the maximum duration of the deposition, the attorney for the other side should reciprocate the courtesy by accommodating a reasonable request

for a continuance if the deposition runs over the scheduled length.

■ Unfortunately, sometimes attorneys behave poorly, in bad faith and completely without courtesy. Mr. Mixter confronted Mr. Boucher with such conduct in relation to the scheduling of Dr. Buchholz's deposition. With the exception of his statement that the deposition would proceed according to the rules and the notice, Mr. Mixter ignored numerous attempts by Mr. Boucher to ascertain a likely duration of the deposition or to confirm his belief that Mr. Mixter intended to depose Dr. Buchholz for only one hour. The discovery guidelines adopted by this Court—as well as simple courtesy—required Mr. Mixter to write a letter to Mr. Boucher that directly and unambiguously addressed the issue. That said, Mr. Boucher did not react properly to Mr. Mixter's inappropriate tactics. Where an attorney taking the deposition of an expert refuses to provide an estimated duration, the deponent is required to comply with the subpoena unless it is subsequently quashed or modified by the Court. Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court. *See* FED. R.CIV.P. 45(a) advisory committee note (1991 amend.) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions."). Rule 45 of the Federal Rules of Civil Procedure provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." FED.R.CIV.P. 45(e). Although the Rule does not define "adequate excuse," it seems beyond doubt that the desire of a subpoenaed individual to work instead of attending the deposition is not an "adequate excuse" that would justify disobeying a subpoena. If it were, people would routinely walk out of depositions and the very purpose of subpoenas would be undermined.

■ Mr. Mixter's notice of deposition to Dr. Buchholz specified that the deposition was to continue until completed. Dr. Buchholz, then, was required to participate in the deposition until it was complete. His failure to do so could be treated as contempt of court. *See* FED.R.CIV.P. 45(e). The Court has not found Dr. Buchholz in contempt because he left the deposition on the advice of Mr. Boucher (Buchholz Dep. 66:6–8). *See* FED.R.CIV.P. 45(e) advisory committee note (1991 amend.) (stating that "because the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied when the non-party witness has been overborne by a party or attorney"). Mr. Boucher, on the other hand, committed an error when he told Dr. Buchholz that he was free to leave. Mr. Boucher's understandable frustration with Mr. Mixter does not excuse this mistake. A lawyer breaches his professional obligation as an officer of the Court when he advises a layperson to disregard or to not fully obey a valid subpoena.

Mr. Boucher's culpability is diminished, however, by his (albeit mistaken and unjustified) conclusion that Mr. Mixter had acquiesced and agreed to a one-hour limit on the deposition of Dr. Buchholz and thereby implicitly modified the terms of the subpoena. Because he decided that Mr. Mixter had acquiesced and agreed to end the deposition after an hour, he reasoned that Dr. Buchholz would not violate the subpoena by leaving after the hour elapsed. Although this reasoning rested on a faulty premise and therefore was in error, the fact that he acted on the basis of this reasoning makes him less culpable than if he believed the subpoena required the deponent to stay but nonetheless instructed the deponent to leave early. I therefore decline to impose sanctions upon Mr. Boucher.

■ Although I do not impose sanctions upon Mr. Boucher, I wish to explain in depth why his assumption that he could advise Dr. Buchholz to leave was mistaken and unjustified. First, a subpoena is issued on behalf of the Court and is not to be modified lightly. Particularly where counsel have a contentious relationship, the failure of the lawyer who issued the subpoena to object to a request for a modification of the subpoena is not enough to justify the lawyer seeking the modification to conclude that the modification

is effective. Likewise, Mr. Boucher was not justified in concluding that Mr. Mixter had agreed to modify the subpoena based on a conversation between his secretary and Mr. Mixter's paralegal. As stated previously, a subpoena is an order of the Court. Like any modification to an order of the court, a modification of a subpoena by the consent of the parties should be recorded in some way. At the very least, Mr. Boucher should have obtained a written statement from Mr. Mixter agreeing to the modification before he concluded that the deposition was limited to one hour. In general, without some record showing that parties have consented to the modification of an otherwise proper subpoena, those parties are bound by the terms of the subpoena itself when, as here, the parties later dispute whether they agreed to modify its terms.

Mr. Boucher had a good and lawful option in response to Mr. Mixter's intransigence. In the absence of a clearer indication from Mr. Mixter that he would limit the duration of the deposition to one hour, Mr. Boucher could and should have filed a motion to modify the subpoena and to limit the duration of the deposition. Courts have the authority to limit the length of depositions. *See* FED. R.CIV.P. 26(b)(2) (providing in pertinent part that "[b]y order, the court may alter the limits in these rules on ... the length of depositions under Rule 30"); FED.R.CIV.P. 45(c)(3)(A)(iv) (providing that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... subjects a person to undue burden").

■ Even if Mr. Boucher believed Dr. Buchholz was entitled to leave because Mr. Mixter had accepted a limit of one hour, Dr. Buchholz should not have left over the objection of Mr. Mixter without Mr. Boucher first attempting to obtain a ruling on the dispute from the Court. Although the Court encourages parties to resolve disputes independently and discourages them from involving the Court at the first hint of a problem, there are times when it is appropriate to place a conference telephone call to the judge's chambers and seek an immediate ruling. *Cf.* D.MD.Rs. app A, Discovery Guideline 1.d

(providing in pertinent part that "[i]n the event that ... good faith efforts [to resolve disputes without the need for intervention by the Court] are unsuccessful, the disputes should be referred promptly to the Court for resolution"). One such time is when a party is about to leave a deposition over the objection of the other party. Had Messrs. Boucher and Mixter presented their dispute to the Court via telephone before Dr. Buchholz left, this dispute might have been resolved much more quickly and efficiently.[6] Because they did not, it has become necessary for the parties, their attorneys, Dr. Buchholz, and the court reporter to reconvene the deposition and thereby expend additional time and resources (Paper No. 79, at 3 (ordering, *inter alia*, that deposition be reconvened)).

■ Mr. Mixter's conduct in relation to the deposition of Dr. Buchholz is troubling because, as indicated above, his bad faith in scheduling is what really started the dispute that only later culminated with Mr. Boucher's mistakes. This conduct of Mr. Mixter alone warrants the Court's strong disapproval. *But it is with respect to Mr. Mixter's conduct in the deposition of Mr. Court that this Court issues its strongest criticism.* Mr. Mixter's conduct in Mr. Court's deposition was egregious—much more serious than Mr. Boucher's conduct in Dr. Buchholz's deposition—because the record indicates that Mr. Mixter *intentionally* disregarded the rules to *retaliate* against Mr. Boucher for what occurred during Dr. Buchholz's deposition. A mistake by an attorney in this context is serious business—intentional and retaliatory misconduct is absolutely inexcusable.

Mr. Mixter's comments on the record during Dr. Buchholz's deposition reveal that he knew the technical rules governing the duration of depositions. He explained to Mr. Boucher:

> I've never agreed to an hour deposition. The notice is what it is, the rules are what

6. The undersigned as well as several other magistrate judges and district judges of this Court are available at short notice by telephone to immediately address discovery emergencies of this sort arising in their cases.

they are, and they are always continuing in nature. (Buchholz Dep. 65:14–17.)

.  .  .  .  .

I have never agreed to an hour deposition, the notice controls and the rules are clear that deposition testimony is continuous until completed subject to local rules which puts certain hour limits which are far beyond an hour obviously.[7] (Buchholz Dep. 67:3–8.)

After Dr. Buchholz left, Messrs. Boucher and Mixter engaged in a lengthy argument about whether Mr. Mixter was entitled to more than an hour to depose Dr. Buchholz. In the middle of this argument, Mr. Mixter asked how much time Mr. Boucher wanted for Mr. Court's deposition. After Mr. Boucher further explained his position on the appropriate duration of Dr. Buchholz's deposition, Mr. Mixter again returned to the issue of Mr. Court's future deposition:

> MR. MIXTER: I will expect to hear from you within the balance of the week as to the precise amount of time you wish to set aside for deposing Mr. Cort [sic] and the physicians whose depositions you have noted from West Virginia, all of whom are experts for the plaintiffs. And I will assume if I don't hear to the contrary, that you will only need an hour to do each of those.
>
> MR. BOUCHER: Well, number one—
>
> MR. MIXTER: Since that seems to be the way you operate and you seem to think that's the way the rules, what the appropriate procedure is for these sorts of depositions, what I suggest to you is not.

(Buchholz Dep. at 77:2–16.) The last sentence in the foregoing excerpt reveals again that Mr. Mixter knew that it was a violation of the applicable rules for a deponent (or the attorney advising him) to unilaterally terminate a deposition after one hour.

The deposition transcripts and related correspondence also reveal that Mr. Mixter terminated Mr. Court's deposition to retaliate in kind for the early termination of Dr. Buchholz's deposition. Mr. Mixter first suggested that Mr. Court's deposition should be limited to an hour during Dr. Buchholz's deposition while counsel were arguing about whether Dr. Buchholz's deposition was limited to one hour. Then, in a letter sent after Dr. Buchholz's deposition and before Mr. Court's deposition, Mr. Mixter explained to Mr. Boucher:

> [M]y experts' time is very valuable and therefore, as your expert did, they need to know how much time you wish to have them set aside for purposes of their depositions. *This is exactly the position you took with respect to Dr. Buchholz' deposition.* If you choose not to designate a specific time for each such expert's deposition, we will assume one hour is satisfactory as you did with Dr. Buchholz. Thus, each of the expert depositions will conclude at the expiration of one hour. This would include the deposition[ ] of Mr. Court. . . .

(Show Cause Hrg., Joint Ex. 1, Letter from Mixter to Boucher of July 23, 2001 (emphasis supplied).) During Mr. Court's deposition, Mr. Mixter stated:

---

7. The notice of Dr. Buchholz's deposition stated that it would continue day to day until complete whereas the notice of Mr. Court's deposition said nothing about the duration of the deposition. In correspondence with Mr. Mixter, Mr. Boucher repeatedly asserted that the applicable rule permitted him seven hours to depose Mr. Court. The undersigned assumes that Mr. Boucher was referring to the 2000 amendment to the Federal Rules of Civil Procedure that modified Rule 30(d)(2) to provide in pertinent part that "[u]nless otherwise ordered by the court or stipulated by the parties, a deposition is limited to one day of seven hours." Fed.R.Civ.P. 30(d)(2) (2000). Although this amendment took effect on December 1, 2000, the Chief Judge of this Court issued an administrative order providing that the amendments to Rule 30 would "apply in this District to all cases in which the initial schedul-

ing order is issued on or after December 1, 2000, but not to cases in which the initial scheduling order was issued prior to December 1, 2000." *In re Effective Date of Rules Amendments,* Administrative Order 2000-1 (D.Md. Nov. 14, 2000) (Motz, C.J.). Because the initial scheduling order in this case was issued before December 1, 2000 (Paper No. 7), the seven hour limitation contained in this amendment does not apply. Contrary to Mr. Mixter's statement in the above-quoted excerpt, neither the federal rules prior to that amendment nor the local rules established a presumptive duration for depositions. As Mr. Mixter recognized in that excerpt, however, any litigator would know that a deposition lasting a few hours is not so unreasonably long as to justify the deponent in walking out of the deposition.

*You set the rules with Dr. Buchholz,* and I've allowed you a half hour beyond what our correspondence indicated. So if you want to give me a reasonable indication of how much longer you think you'll be to complete the deposition, I'll consider the possibility of letting you go beyond right now. If you don't want to ... be reasonable about [indicating] how much longer you're going to be, ... then I think we'll pack it up and leave, *much like you did with Dr. Buchholz.* (Court Dep. 68:16 – 69:8 (emphasis supplied).)

...

*I'm only following the rules as you set them for the deposition with respect to Dr. Buchholz.* I made it clear in my correspondence back to you that I would take as long as I needed to complete Dr. Buchholz's deposition, and despite that, when I arrived, actually after the deposition had ensued of Dr. Buchholz, you aborted it after an hour.... And here today, I've allowed you to go a full half hour beyond the hour that I indicated I would, much like with Dr. Buchholz, allow you to depose Mr. Court absent some representation of what, *as you asked of me with Dr. Buchholz,* how long it would take to depose Dr. Court. I've reiterated the offer while I'm here today to allow you to complete the deposition within reason, with some representation of how long we're going to be and you've chose not to make a response to that. So with that, *as you did with Dr. Buchholz,* this deposition is over. (Court Dep. 73:20 – 75:4 (emphasis supplied).)

When asked why he needed to know how long the deposition would continue, Mr. Mixter responded:

Because I want to make sure, as he did, that there is going to be payment for the time that he's allotted for the deposition and he has other commitments, and could not plan accordingly because Mr. Boucher would not give him some sort of reasonable estimate of how long it would take, and that was the quarrel he had with Dr. Buchholz. Dr. Buchholz's time was so incredibly valuable that he needed to plan his day accordingly. Mr. Court's time is equally valuable and he needs to plan his day accordingly, and without being able to do

so this is the time we've allotted. (Court Dep. 75:7–19.)

When Mr. Boucher reminded Mr. Court that he was served with a federal subpoena, Mr. Mixter interrupted, "So was Dr. Buchholz" (Court Dep. 76:8–10).

At the hearing on the Court's Show Cause Order, Mr. Mixter explained that he had reached his "wit's end" by the deposition because Windline had not produced discovery. He said that he followed the "framework set by my opposition" and responded "in kind" to Mr. Boucher's conduct. He stated that this was an explanation, not an effort to justify his conduct. He also acknowledged that there was no law that permitted a party or an attorney to respond in kind to perceived violations of discovery rules by opposing counsel.

Mr. Mixter's conduct was more egregious than Mr. Boucher's because he purposefully disregarded the rules and procedure he knew to govern in order to retaliate in kind against Mr. Boucher. Moreover, Mr. Mixter's conduct was not based upon the kind of erroneous assumptions about the proper procedure and/or the position of opposing counsel that somewhat mitigates Mr. Boucher's culpability. Whereas Mr. Boucher may have erroneously concluded that Mr. Mixter consented to limit Dr. Buchholz's deposition to an hour because he did not directly object to such a limitation, Mr. Mixter could not have made the same mistake because Mr. Boucher objected loudly and clearly to any suggestion that Mr. Court's deposition would be limited to an hour. Moreover, Mr. Mixter's comments during the depositions reveal that he knew that depositions were of a continuing nature under the rules but chose to disregard those rules because in his view Mr. Boucher had done so. Mr. Boucher made mistakes. Mr. Mixter purposefully misbehaved.

### III.

There are several applicable legal grounds upon which the Court can impose sanctions for behavior by counsel that disrupts a deposition.

Rule 30(d) of the Federal Rules of Civil Procedure provides in pertinent part that if a

court finds that an "impediment, delay, or other conduct ... has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." FED.R.CIV.P. 30(d)(2) (1993).[8] A court may sanction attorneys under this paragraph. *See* FED.R.CIV.P. 30(d)(2) advisory committee note (1993); *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 781 (D.Md.2000) (Chasanow, J.).

■ A court may also sanction attorneys pursuant to 28 U.S.C. § 1927, which provides in pertinent part that "[a]ny attorney ... admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously maybe required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.; see Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir.1995) (affirming imposition of sanctions against attorney pursuant to 28 U.S.C. § 1927 for misconduct during deposition). Sanctions are warranted only if the attorney's conduct "manifests either intentional or reckless disregard of the attorney's duties to the court." *Resolution Trust Corp.*, 73 F.3d at 265.

■ Finally, the Court has the inherent authority to redress discovery misconduct through the imposition of sanctions against an attorney ranging from an award of expenses to an imposition of default judgment. *See Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497 (D.Md.2000) (Gauvey, J.); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (authorizing award of attorney fees against counsel). Such sanctions may be imposed pursuant to the Court's inherent power only where the Court finds that the attorney acted in bad faith. *See Poole*, 192 F.R.D. at 497. Some courts have required that the misconduct be shown by clear and convincing evidence. *See id.* at 498 & n. 4 (citing such cases but noting that

the Fourth Circuit had not yet decided the issue). Although the availability of other sanctions does not limit or displace the Court's inherent authority, *see id.* at 497 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)), the Court should exercise restraint in exercising their inherent powers because they are potent yet shielded from democratic controls, *see id.* (citations omitted). Mindful of the need for such restraint, this Court previously has declined to impose sanctions pursuant to its inherent powers where it found that other available sanctions were sufficient to redress counsel's misconduct. *See id.* at 498.

Although Mr. Boucher made several mistakes, I do not find his conduct sufficiently egregious to warrant an imposition of sanctions. The Court expects he will take steps to prevent similar mistakes in the future.

As explained above, Mr. Mixter's conduct was inexcusable. The Court finds that he intentionally "frustrated the fair examination of the deponent" by advising Mr. Court to leave before the deposition was complete and that sanctions therefore are warranted under Rule 30(d)(2). The Court also finds that Mr. Mixter acted unreasonably and vexatiously and intentionally disregarded his duties to this Court when he so advised Mr. Court and that this "multiplie[d] the proceedings" by necessitating that Mr. Court's deposition be reconvened at a later date. Sanctions therefore are also warranted pursuant to 28 U.S.C. § 1927.

As a sanction under Rule 30(d)(2) (1993) and 28 U.S.C. § 1927, Mr. Mixter personally shall pay $500.00 to Defendant KCS International, Inc., t/a Cruisers Yachts, and $500.00 to Defendant Warehouse Creek Yacht Sales, Inc., on or before September 30, 2001, to compensate them partially for the additional attorney fees and expenses that they incurred because Mr. Court's deposition had to be reconvened. Because I find that the sanctions available under Rule 30(d)(2) (1993) and 28 U.S.C. § 1927 adequately redress the mis-

---

8. This quote is taken from Rule 30(d)(2) as it existed prior to the 2000 amendment. *See supra* fn. 7 (noting that pre-amendment version of Rule 30 applies in this case). That amendment re-

moved this provision from paragraph (2) and inserted nearly identical language as paragraph (3).

conduct, I decline to impose sanctions pursuant to the Court's inherent power.

Further, this matter will be referred to the Disciplinary Committee of this Court for its review of Mr. Mixter's conduct.

A separate order will issue.