**BRANHAVEN, LCC**

v.

**BEEFTEK, INC., et al.**

**Civil No. WDQ–11–2334.**

United States District Court,
D. Maryland.

Jan. 4, 2013.

Steven Neal Leitess, Leitess Leitess Friedberg and Fedder PC, Baltimore, MD, Jennifer Sutherland Lubinski, Leitess Leitess Friedberg and Fedder PC, Owings Mills, MD, Tiasha Palikovic, Vanessa M. Biondo, New York, NY, for Branhaven, LCC.

Eric Job Seese, Keara Marie Gordon, DLA Piper LLP U.S. New York, NY, Hugh J. Marbury, Benjamin David Schuman, Thomas Brendan Kennedy, DLA Piper LLP U.S. Baltimore, MD, for BeefTek, Inc., et al.

## MEMORANDUM OPINION

SUSAN K. GAUVEY, United States Magistrate Judge.

Pending before the Court is defendants' motion for sanctions for "discovery abuses intended to harass defendants, cause unnecessary delay, and needlessly increase the cost of litigation" under both Fed.R.Civ.P. 26(g) and 28 U.S.C. § 1927 (ECF Nos. 54 and 56). Briefing is complete. No further hearing is necessary.[1] Local Rule 105.6. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion.

---

1. On July 30, 2012, the Court held a brief telephone hearing on the motion, at defense counsel's request. I indicated in that hearing that given all the circumstances and governing law, I was highly unlikely to forbid plaintiff from use of the July 20 production documents in the litigation, suggested that the 30(b)(6) depositions might be postponed to allow defendants' counsel reasonable time to review the documents and stated I would consider lesser, targeted sanctions, on a non-emergency basis. Given defense counsel's decision to go forward with the depositions, there was no immediate relief necessary or ordered in the matter.

This is a declaratory judgment action regarding the rights and obligations of the parties under certain licensing and distribution agreements. The instant motion raises several complaints against plaintiff and its counsel over the conduct of discovery and asks that the Court sanction Branhaven for its discovery abuses, specifically prohibit Branhaven from using any documents in its July 20, 2012 document production in this litigation and award defendants their attorneys' fees and costs relating to Branhaven's discovery violations.

In their motion, defendants make three complaints:

(1) plaintiff's delays in document production and scheduling of depositions;

(2) the large, disorganized and last minute document production on July 20, 2012; and

(3) unreasonable multiple Rule 45 subpoenas.

■ As to items 1 and 3, defendants did not bring this allegedly abusive discovery conduct to the Court contemporaneously and seek relief at that time.[2] And, indeed, defendants have not made any request for special relief now. While defendants ask for an award of "attorneys' fees and costs" as a result of Branhaven's discovery violations, (ECF No. 54–2, 8), defendants have not, in any way, linked the fees and costs to specific conduct, as to these two complaints. While the Court accordingly declines to review the conduct for purposes of imposition on sanctions, that does not mean the undersigned judge endorses the reported conduct.[3] Defendants' counsel states that plaintiff's counsel scheduled four non-party depositions in four different states for the same time, without consultation as to defendants' counsel's availability and with essentially three business days' notice, and then cancelled without explanation to counsel all four after defendants' counsel had scrambled to obtain, and educate, counsel for all four, within 24 hours of the depositions. Plaintiff offers no acceptable explanation of this conduct. (See ECF No. 59–4, ¶¶ 16, 17 and 19). Plaintiff's counsel does not claim to have consulted with opposing counsel on dates nor did counsel consult with the subpoenaed parties to see if the depositions were in fact necessary or in fact that service of the subpoenaed parties could be effected on such a short turnaround time. As plaintiff's counsel eventually explained, she cancelled the depositions because on inquiry one deposition would have been fruitless and the subpoenas for the other depositions were not successfully served. (ECF No. 59–4, ¶ 19).

This conduct clearly violates Guideline 4 of The Discovery Guidelines (Appendix A to the Local Rules of the District of Maryland) which provides that: "Attorneys are expected to make a good faith effort to coordinate deposition dates with opposing counsel, parties and non-party deponents before noting a deposition" and the most fundamental courtesy due one professional to another. Since defendants did not file any motion to quash the subpoenas at the time (though defendant did object to counsel) nor seek then or now the costs incurred in ramping up for the depositions in four states only to have them cancelled, the Court shall consider this unrefuted conduct solely as background.

As to item 2, defendants brought the conduct to the Court contemporaneously charging a violation of Rule 26(g), that is, that plaintiff's counsel had certified—incorrectly—in signing the response to defendants' requests for production on or about March 21, 2012, that counsel had done so "to the best of [his or her] knowledge, information

---

2. The Advisory Committee Notes to Fed.R.Civ.P. 26 provide that: "[t]he Court may take into account any failure by the party seeking sanctions to invoke protection under Rule 26(c) at an early stage in the litigation." The Court appreciates the fine line counsel walk in deciding which discovery disputes to bring to the Court for resolution. Rightly, counsel do not want to trouble the Court unnecessarily over every real and imagined slight. However, by failing to bring a matter contemporaneously, the Court is deprived of its ability to resolve the matter and "nip in the bud" a course of improper conduct. Here apparently the July 20 production was the straw that broke the camel's back—leading defense counsel to seek judicial relief.

3. As to complaint (1)—delays in document production and scheduling of depositions, defense counsel does not provide enough factual detail to understand and assess this complaint. The Court does not consider it in its ruling.

and belief formed after reasonable inquiry." The Advisory Notes to Rule 26(g) provide that "the signature certifies that the lawyer has made a reasonable effort to assure that the client *has provided* all the information and documents available to him that are responsive to the discovery demand." (emphasis added).

▮ Clearly, the Response to the request for production of documents was misleading and inadequate under the rules. Defendants' Request for Production of Documents asked plaintiff to "produce and make available for inspection and copying the documents in its possession, custody and/or control described below ... at the offices defense counsel, or at such other place mutually agreeable to counsel within 30 days of the service of this Request." (ECF No. 59–1, 2). In its Response as to each request for documents plaintiff stated: "The Defendant will make the responsive documents available for inspection and copying at a mutually convenient time."[4] (ECF No. 72–1).

First, this response does not comply with Fed.R.Civ.P. 34, which commands that a response "shall state, with respect to each item or category, that inspection and related activities will be permitted *as requested,* unless the request is objected to, in which event the reasons for the objection shall be stated." (emphasis added). Notably, Fed.R.Civ.P. 37(a)(4) provides that "an evasive or incomplete ... response must be treated as a failure to ... respond." As stated in *Lee v. Flagstaff Industries Corp.,* 173 F.R.D. 651, 656 (D.Md.1997):

> There are only three appropriate responses to a request for production of documents: (1) an objection to the scope, time, method and manner of the requested production; (2) an answer agreeing to the requested scope, time, place and manner of the production; or (3) a response offering a good faith, reasonable alternative

production which is definite in scope, time, place or manner.

Plaintiff did none of the three. Rather, with its meaningless and arguably misleading response, plaintiff simply tried to buy time and technically comply with Rule 34. One of plaintiff's counsel essentially admitted as much.

The requests were served on January 31, 2012. Plaintiff's counsel stated that "I promptly forwarded the Defendants' requests [for production] to Branhaven and Scidera so that they could begin to collect and review responsive documents." (ECF No. 59–3, ¶¶ 7, 11). Plaintiff's counsel's understanding was that "Branhaven was assembling its documents for production to the Defendants ... [and that] plaintiff's counsel was in communication with Branhaven about Branhaven's document production in general." (ECF No. 59–4, ¶ 12). Branhaven filed its Response on March 21. Defense counsel candidly admit that this response was essentially meaningless in terms of identification and production of responsive documents.

> By March 16, 2012 I had not been provided discovery responses by the client. In an effort to provide discovery responses, I forwarded responses to the Defendants' document requests on March 16, 2012 indicating that responsive documents would be made available for review by Defendants at a mutually agreeable date and time.

(ECF No. 59–4, 2, ¶ 9).

The record undisputedly shows that as of March 21, plaintiff's counsel had done little, or nothing, in terms of a reasonable inquiry and indeed had no knowledge of the number and identity of responsive documents. Indeed, it does not appear that plaintiff's counsel took any action until the middle of June. *But see* (ECF No. 59–4, 3, ¶¶ 7–8). Accordingly, the Court concludes that Branhaven failed to make "a reasonable effort to assure that the client has provided all the information and documents responsive to the discov-

---

4. Branhaven argues that a protective order was not in place as of March 21. While the Court understands that there might be some delay in actual production of documents until a satisfactory protective order was in place, the lack of a final protective order does not excuse Branhaven from identifying and gathering the responsive documents nor from essentially misrepresenting that the responsive documents were ready for review as soon as a date and time was agreed to. It appears, moreover, that *defendants* had agreed to the proposed, revised protective order as of March 2. (*See* ECF No. 59–4, 2–3, ¶ 4).

ery demand," *Poole v. Textron, Inc.*, 192 F.R.D. 494, 503 (D.Md.2000) (quoting Fed. R.Civ.P. 26(g) advisory committee's notes to the 1983 amendments), misled the opposing party and the Court in its certification, and did not comply with Fed.R.Civ.P. 34.

On June 14, 2012, the first documents were produced. Plaintiff's counsel stated that:

> Branhaven had not assembled documents for production. I, with the assistance of a paralegal, assembled responsive documents which were in the firm's possession and produced them on that date to the Defendants. These documents were produced in Adobe PDF format and were Bates stamped 0001–0046.

(ECF No. 59–4, 4 ¶ 13).

Some, few additional documents were apparently produced in the succeeding month, bringing the total production before July 20 to 388 pages. On July 20, only a couple of business days before the Branhaven 30(b)(6) depositions, Branhaven produced 112,106 pages—the reported result of a search of the email servers of Meta Morphix, which company and assets Branhaven acquired in 2011, and two overlooked laptops.[5] The email servers and laptops will be discussed in turn.

The only explanation that plaintiff's counsel offers for the delay in identification and production of the responsive documents on the email servers is wholly unacceptable. Branhaven states:

> The sources of the documents referred to as the "document dump" by defendants were computer servers Branhaven purchased as part of the asset sale of another entity in 2011. Branhaven did not have access to the passwords necessary to access the servers. Branhaven is also essentially a start-up company and its litigation funds are not unlimited. Branhaven was concerned about the expenses associated with vendor-assisted electronic discovery and accordingly it attempted to obtain the

documents itself, using its in-house information technology staff.

(ECF No. 59, 4).

As defendants note, plaintiff did not appear to engage an outside vendor until July (ECF No. 59–5, 5). Plaintiff's explanation is wholly unacceptable for several reasons.

First, Branhaven delayed approximately *five* months before seeking an outside vendor from the date of the request for production. While a one month delay to allow an in house effort to access the servers might be seen as acceptable; a five month delay with its impact on the opposing party's discovery is not.

Second, Branhaven is the plaintiff! Surely before initiating a lawsuit, which of course has resulted in substantial defense costs, Branhaven must have understood that it necessarily also would be subject to discovery demands with the attendant costs.

Third, Branhaven essentially misled defendants and their counsel, in its affirmative statement that responsive documents would be "available for inspection and copying at a mutually available time," while in fact not knowing what if any responsive documents there might be and when if ever they would be identified and produced. It can be reasonably inferred from the timing and manner of the July 20 production (as well as the request for a postponement of an earlier production date) that Branhaven did not in fact get access to the email servers and emails therein until very close to the July 20 production date. Thus, when Branhaven filed its March response, offering production of responsive documents for review it had not yet even obtained access to the email servers, much less reviewed them and identified responsive documents.

Accordingly, the Court finds that plaintiff's counsel in their execution of the Response to the requests for production wrongly certified that they were responding to the document requests "to the best of [their] knowledge, information and belief after reasonable inquiry."[6] Plaintiff's counsel said he "promptly"

---

5. There was also a box of responsive documents that Branhaven belatedly identified (sometime in June) allegedly due to mislabeling. (ECF No. 59–4, 5 S 15). It is not clear when these documents were produced.

6. The Court also finds that their response also is inadequate under Fed.R.Civ.P. 34, as discussed above.

sent the document request to his clients (ECF No. 59–3, 4 ¶ 11), but quite apparently did *no* meaningful follow-up. Only sometime in June or July, did he or plaintiff's junior counsel "wake up" to the fact that the client had failed to appropriately respond.

Plaintiff's delay in addressing the lack of access to these email servers is inexcusable. There is no more obvious and critical source of information in the 21st century than a company's email accounts. Plaintiff's counsel's failure to identify and produce this discovery in a timely fashion and in an acceptable form and manner while suggesting—if not misleading defendants—that it had identified responsive documents is sanctionable.

As to the laptops, there is a similar, if somewhat less egregious situation. Plaintiff's counsel stated in his affidavit that he thought he had sent them to his clients. However, the laptops were not sent, but he only realized that when his new associate found the laptops when looking for other documents in late June. Again, this strongly suggests that notwithstanding the representation in the March 2012 response to the requests for production, that he did not follow up with the client in any way in the months after he thought he had sent the laptops. Yet plaintiff's counsel blithely asserts documents would be produced at a mutually convenient time and certifies that a reasonable inquiry had been done when neither plaintiff's counsel had *any* idea what, if *any*, responsive documents had or would be found on the laptops or indeed on the email servers.

The defendants also complain about the nature of this July 20 document production, in PDF format, without complete Bates stamping and at the eleventh hour. The O'Neill Affidavit sets forth the serious inadequacies of plaintiff's production and the resulting additional work late into the night that plaintiff's production caused. (ECF No. 54–1).

Plaintiff responds that the production was timely and in proper order, challenging defendants' critique of its document production, specifically the production in PDF, not .tiff format, its lack of Bates-stamping of every page and the untimeliness of the production.

First, plaintiff states that defendants produced their electronic documents to Branhaven in PDF format. It is disingenuous for plaintiff's counsel to rely on the fact that defendants produced their discovery response in PDF to justify its production in that format (ECF No. 59–3, 6, ¶ 22). As defendants have carefully set out in their reply memorandum (ECF No. 65), that was Branhaven's choice, informed apparently by its intention not to review and search defendants' documents electronically, but manually. Defendants did so at plaintiff's law office's request, having previously produced them in .tiff format. (ECF No. 65, 2, 3 ¶¶ 6–7).

Second, Branhaven tries to defend its failure to Bates stamp all the pages of the July 20, 2012 document production as neither a specific request of defendants nor an express requirement of the rules, discovery guidelines or the case law. Plaintiff is correct in observing that the Court's suggested Protocol for Discovery of Electronically Stored Information (Local Rules of District of Maryland) which establishes .tiff as preferred format is only advisory. That is a weak defense.

Moreover, as defendants point out, Fed. R.Civ.P. 34(b)(2)(E)(ii) provides two options regarding the form in which a party may produce documents and plaintiff did not satisfy either. The July 20 production was not in a form "in which it is ordinarily maintained" or in "a reasonably usable form"—as Mr. McNeil showed (especially considering the lateness of the production with depositions looming in a few days). The Advisory Committee Notes to Rule 34 warn that: "[a] party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in *the response* required by Rule 34(b) runs the risk that the requesting party can show that the produced form is not reasonably usable ..." (emphasis added). That is precisely what happened here. Branhaven did not advise of the intended form of its production in its March response. Defendant was blindsided by the volume of the documents (since the prior productions consisted of 388

pages). Moreover, defendants had every reason to think that the documents would be completely Bates-stamped, as prior productions were and further defendants had no reason to think that this production would be so incredibly voluminous, as to require special arrangements and explicit agreement.

While the Court agrees that the PDF format and lack of Bates-stamping does not violate any explicit agreement between the parties, it appears to violate Rule 34 and appears contrary to customary and reasonable practice especially in voluminous productions and further complicated defendants' review of the documents, causing further expense and delay. Through the McNeil affidavit defendants have demonstrated that without Bates stamping and .tiff format, the data was not reasonably usable and therefore was insufficient under Rule 34.

The production—flawed as it was—was timely—though barely at 9:40 p.m., under the operative scheduling order (which set July 20 as the deadline for Branhaven's completion of its document production (ECF No. 52)) [7]. The Court does not find plaintiff's assertion about the timeliness of the production helpful to Branhaven's case. Without defense counsel's cooperation in letting plaintiff use its electronic site and capabilities to upload its documents (a last minute request), Branhaven surely would have missed the deadline. Thus production was technically timely, but the history and manner of production paints a picture of unacceptable attorney conduct.

Finally, the Court finds it disingenuous for Branhaven to excuse its production of a huge volume of documents in an unusable form and manner by asserting that defendants could have postponed the 30(b)(6) depositions. The discovery deadline in the case was August 3; the dispositive pretrial motion deadline was August 31, 2012 (ECF No. 52).[8]

Accordingly, the Court shall award defendants the reasonable litigation support costs involved in receiving and processing the July 20, 2012 document production. *See* McNeill Affidavit (ECF No. 54–1, ¶ 13). The Court declines to order exclusion of these documents from evidence in plaintiff's case. The Court agrees with the plaintiff that its conduct and that of its lawyers do not justify the harsh remedy of exclusion of evidence that defendants sought. (ECF No. 59, 7). While the Court appreciates defendants' frustration, the sanction of exclusion of documents from evidence is reserved for more egregious actions. But the Court disagrees with plaintiff's characterization of its conduct as a "mere[ ] inconvenience [to] the Defendants," not deserving of sanctions. *Id.*

This judge does not want to micromanage discovery between counsel, nor create a hyper-detailed code of discovery conduct. However, neither does this judge want to endorse this "hands off" approach in working with clients to meet discovery obligations and this casual and even reckless attitude of plaintiff's counsel to opposing party's right to timely and orderly discovery.

Plaintiff's counsel asserts that "[n]one of Branhaven, Scidera, [or any of plaintiff's counsel] intentionally concealed any discoverable material, nor did we take any actions that were designed to frustrate these proceedings or the discovery process in particular." (ECF No. 59–3, 7, ¶ 27). That, however, is not the standard. As plaintiff's counsel has an affirmative duty to assure that their client responds completely and promptly to discovery requests. Their inaction seriously frustrated the defense of this case. The record here demonstrates a casualness at best and a recklessness at worst in plaintiff's counsel's treatment of their discovery duties. I agree with defense counsel that the attorneys abdicated their responsibilities while representing that they had not. If all coun-

---

7. An earlier scheduling order set July 13 as the deadline for the completion of Branhaven's document production (ECF No. 50). That would, of course, have allowed *defendants'* counsel a more reasonable amount of time to review the document production and prepare for the plaintiffs' deposition—not the five or so days he had. The prior scheduling order had a discovery cutoff of July 2, 2012. (ECF No. 45).

8. While plaintiff is correct that the Scheduling Order suggests the possibility that the Branhaven 30(b)(6) depositions might after July 25–27, delay *does not benefit defense counsel, given the* schedule.

sel operated at this level of disinterest as to discovery obligations, chaos would ensue and the orderliness of the discovery process among counsel in federal courts, which is exquisitely dependent on honorable attorney self-regulation, would be lost.

Defendants assert that they have incurred and seek from plaintiff and its attorneys approximately $51,122 in legal fees and expenses related to Branhaven's document dump, including: (a) time spent by litigation support analysts in receiving the production and converting it to a reviewable format; (b) time spent by attorneys searching and reviewing the document dump in preparation for depositions; and (c) time spent by attorneys in drafting, filing and prosecuting this Motion for Sanctions. (ECF No. 56, 4).

The Court shall grant an award as to (a), deny as to (b) and grant limited fees under (c). The Court agrees to a large extent with Branhaven that defense counsel "would have had to review Branhaven's document production regardless of its format and regardless of whether the production was timely or untimely." (ECF No. 59, 10), so that an award of attorney time searching and reviewing the July 20 document production in preparation for depositions is inappropriate. However, the production of an expectedly large number of documents at the last minute, not in a reasonably usable form for such a large production certainly made management of the data more difficult and review of the documents much more stressful. But, other than the expenses identified in (a), the Court will not award attorney review time, etc. unless additional personnel costs can be demonstrated due to crunch that this production unnecessarily created. Accordingly, defendants shall submit a petition for time spent in (a) and for time spent in (c).

An award of attorneys' fees and costs is sought under Fed.R.Civ.P. 26(g)(1) and 28 U.S.C. § 1927. Rule 26(g)(3) provides that "[i]f a certification violates this rule without

substantial justification, the court … *must* impose an appropriate sanction on the signer of the party on whose behalf the signer was acting, or both, including an order to pay the reasonable expenses, including attorneys' fees caused by the violation." (emphasis added). The Court has found a violation of the rule without substantial justification and accordingly must impose an appropriate sanction, which in the Court's opinion are the manpower and equipment costs defendants incurred as a result of the last minute and inadequate form and manner of the document production and reasonable attorneys' fees in bringing this violation to the Court's attention.

The final question is whether the Court should award the costs of document production and attorneys' fees against Branhaven alone, against Branhaven and its counsel or solely against its counsel, and if against its counsel, which of its counsel.

The Court shall make the award jointly and severally against Branhaven and plaintiff's counsel.[9] Plaintiff's senior counsel is a name partner at the firm and an experienced attorney admitted to practice in our court in 1988. Plaintiff's junior counsel was apparently not a member partner or principal of the firm and had considerably less experience at the bar. While plaintiff's junior counsel was counsel of record as of October 20, 2011, with plaintiff's senior counsel, and physically "signed" the Response to Requests, it is clear that plaintiff's senior counsel was managing the case and was having the contact with the client and that plaintiff's junior counsel was taking his direction as to specific tasks. *See e.g.*, (ECF No. 59–3, 4, ¶¶ 12, 13; ECF No. 59–43–6, ¶¶ 12, 14, 16, 18).

Moreover, while only plaintiff's junior counsel's actual signature is on the response, it is submitted under the names of all attorneys of record in the case. Given no apparent role of plaintiff's senior counsel, the award will be against plaintiff's counsel and

---

9. I would have preferred to make the award against the firm, rather than the individual attorneys. Unlike Fed.R.Civ.P. 11 which specifically authorizes the imposition of the sanction on the law firm, in addition to or in lieu of the individual lawyer, neither Rule 37 nor Rule 26 contains such a specific authorization. In light of that fact and the precedent of *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), this Court is constrained to award the expenses against the specific lawyers representing Branhaven.

Branhaven jointly and severally. The Court views the junior counsel as less culpable than the senior counsel, for the reasons stated above.

Additionally, defendants seek an award of the expenses and attorneys' fees under 28 U.S.C. § 1927 against plaintiff's counsel and their law firm jointly and severally.

The parties spar over the requisite test for imposition of an award under § 1927. There is no definitive decision in the Fourth Circuit on point. One commentator has observed that "[t]he majority of courts have split over whether an attorney must have subjective bad faith in order to impose a sanction under Section 1927, or whether objective reckless-ness is sufficient." James F. Holderman, Section 1927 Sanctions and the Split Among the Circuits, Litigation, Fall 2005, at 44, 46. Plaintiff contends that subjective bad faith by counsel must be demonstrated relying on out-of-circuit authority. (ECF No. 59, 12). Defendants cite to other cases concluding that subjective bad faith is not necessary including a decision from this Court; that objective bad faith is sufficient.

The Fourth Circuit has not decided the issue whether subjective bad faith or the less stringent objective standard applies. *Salvin v. Am. Nat'l Ins. Co.*, 281 Fed.Appx. 222, 225 (4th Cir.2008). The Seventh Circuit Court of Appeals has said that "[r]ecklessness or in-difference to the law constitutes [objective] bad faith." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir.1992). The D.C. Circuit acknowledged the split in the circuits on the contours of the requisite bad faith but ob-served that all "courts, including those apply-ing the lesser standard, at a minimum agree that unintended, inadvertent and negligent acts will not support an imposition of sanc-tions under Section 1927." *U.S. v. Wallace*, 964 F.2d 1214, 1219 (D.C.Cir.1992) (citing *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)).

This is a close case. This judge is not prepared to find that counsel acted in subjec-tive bad faith, but it does appear that they acted in callous disregard for their responsi-bilities under the rules. By their certifica-tion in the response, they were attesting to their investigation of all available documents responsive to the requests and certainly by their offer to produce the responsive docu-ments at a mutually convenient time, they were representing that they had done their "homework" and the rest was logistics. They clearly had not made a reasonable in-vestigation at that time and clearly were "buying time" through their misleading re-sponse to the requests for production of doc-uments. On the other hand, some might view the conduct as "unintended, negligent and inadvertent." Plaintiff's counsel denied any intentionality or venality in his and his colleagues' actions. (ECF No. 59–3, 7). However, the misleading response to the re-quest for production of documents, the secre-cy enveloping plaintiff's discovery efforts and its disregard for defendants' discovery needs, preferring its own financial concerns, all speak of "recklessness or indifference to the law." However, because defendants are af-forded relief under Rule 26(b), the Court declines to award sanctions under § 1927.

Accordingly, defendants should submit a bill for the equipment and consulting costs that the July 20 production entailed, by **Jan-uary 15, 2013**. (If plaintiff wishes to re-spond, it should do so by **January 29, 2013**). Further, I will consider a modest award of attorneys' fees associated with the motion for sanctions. Of course, plaintiff may be heard before an award is made. I suggest an award of $7,500. If counsel for plaintiff and defendants agree on this amount by **January 15, 2013**, that will dispense with the consider-able submissions and briefing on both sides. If either side does not agree, defense counsel shall submit an affidavit and contemporane-ous records for the attorneys' fees it seeks by **January 29, 2013**, and plaintiff's counsel its response by **February 12, 2013**.